IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | 4:05CR3105 |
| | ) | |
| v. | ) | |
| | ) | |
| GERALD GRANT, | ) | REPORT, RECOMMENDATION |
| | ) | AND ORDER |
| Defendant. | ) | |
| | ) | |

    The defendant has moved to suppress all evidence found during a search of defendant's computer conducted pursuant to a warrant issued on September 10, 2003 by a County Court Judge for Lincoln County, Nebraska.  Filing 24.  The warrant was issued upon the application and affidavit of Nebraska State Patrol Investigator G. J. Eng.  The defendant claims Investigator Eng's search warrant application and affidavit did not set forth an adequate probable cause showing and were so deficient that the good faith exception to the warrant requirement created by United States v. Leon, 468 U.S. 897, 923-24 (1984), does not apply in this case.  Plaintiff counters that there was a sufficient showing of probable cause, but even it not, the Leon exception applies.

    The warrant affidavit, search warrant, and warrant return and inventory were filed as attachments to the defendant's motion to suppress.  As applied to the issues raised by the defendant, the relevant evidence is set forth in the warrant affidavit.  It states:

> •     On September 9, 2003, Investigator Eng, an investigator with thirteen years' experience in applying for search warrants, received information from Custer County

Sheriff Deputy Tyler Shea concerning information received from Tracy Sundstrom, an employee of Pro Computing, a computer repair business located in North Platte, Nebraska.  According to Deputy Sheriff Shea, Sundstrom told the sheriff's office that Marsha Grant had delivered a computer to Pro Computing, located at 721 South Dewey, North Platte, Nebraska, for repair. Sundstrom also told the deputy sheriff that a Pro Computing service technician, David Lewis, found what he believed was child pornography on the Grant's computer.

- On September 10, 2005 Investigator Eng went to Pro Computing's business location and spoke with Tracey Sundstrom.  Sundstrom stated that David Lewis was not at work at the time.  Sundstrom explained, however, that Lewis had been a computer technician for a "long time" and had worked on several home computer processing units.  Sundstrom reported that Lewis had previously found adult pornography on several computers, but Lewis believed the images he found on Grant's computer were child pornography.

- Investigator Eng knows that child pornography on home computers is becoming an epidemic and violates Nebraska Law.

- Investigator Eng requested a search warrant to seize Grant's computer from Pro computing and search it for child pornography.

Filing 24, attachment.


LEGAL ANALYSIS


The defendant claims the warrant affidavit lacks sufficient information to justify either a probable cause finding or the application of the good faith exception set forth in United States v. Leon, 468 U.S. at 923-24.  Specifically, the defendant claims there was no statement explaining:  1) why the Pro Computing employees should be believed; 2) how Lewis knew what he

2

found on the computer was child pornography; and 3) what "type" of alleged child pornography Lewis claimed was on the computer. Filing 25 at 4.

When considering a challenge to the adequacy of a warrant affidavit the court is to view it as a whole, and it "should be read with common sense and not in a grudging, hyper technical fashion." Technical Ordnance, Inc. v. U.S., 244 F.3d 641, 649 (8th Cir. 2001)(quoting Walden v. Carmack, 156 F.3d 861, 870 (8th Cir. 1998)).  Substantial deference is to be accorded the issuing judge in his/her assessment of probable cause. United States v. Bieri, 21 F.3d 811, 815 (8th Cir.1994).

1.   Credibility of Sundstrom and Lewis.

Information supplied by a citizen who purports to be the victim of or a witness to a crime and who, motivated by good citizenship, voluntarily comes forward to aid law enforcement, should be considered reliable unless there is a reason to challenge it.  United States v. Ross, 713 F.2d 389 (8th Cir. 1983); State v. Duff, 226 Neb. 567, 571-572, 412 N.W.2d 843, 846 (1987).[1]  "Courts are willing to find citizen informants reliable because such individuals generally have no motive to falsify." State v. Duff, 226 Neb. at 571-572 (citing United States v. Ross, 713 F.2d 389 (8th Cir. 1983) and United States v. Gagnon, 635 F.2d 766 (10th Cir. 1980)).  Therefore, a warrant affidavit "need

---

[1] See also, United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993); Caldarola v. Calabrese, 298 F.3d 156, 163 (2d Cir. 2002); United States v. Phillips, 727 F.2d 392, 397 (5th Cir. 1984); United States v. Swihart, 554 F.2d 264, 269 (6th Cir. 1977); United States v. Unger, 469 F.2d 1283, 1286-87 (7th Cir. 1972); United States v. Michaelian, 803 F.2d 1042, 1045-46 (9th Cir. 1986); United States v. Gagnon, 635 F.2d 766 (10th Cir. 1980).

not set forth facts of a named person's prior history as a reliable informant when the informant is a citizen/neighbor eyewitness with no apparent ulterior motive for providing false information." <u>Gagnon</u>, 635 F.2d at 768.

Investigator Eng's warrant affidavit states Tracey Sundstrom contacted the Custer County Sheriff's Office and reported that an employee of his[2] computer repair business had found what he believed was child pornography on a computer delivered to Pro Computing by Marsha Grant, a resident of Arnold, Nebraska.[3]  Mr. Sundstrom identified himself and his business, Pro Computing, by name, and provided the specific address for Pro Computing's business location in North Platte, Lincoln County, Nebraska. Investigator Eng investigated this tip the next day by speaking with Sundstrom at his business.  Sundstrom identified David Lewis as a long-time computer technician and the Pro Computing employee who had reportedly found the alleged child pornography on Grant's computer.  Though the affidavit provides no specificity as to how the child pornography was found or what was located, it is difficult to envision any underlying motive Pro Computing or its employees would have in "planting" contraband in a customer's computer and/or making a false report to law enforcement; a computer repair business in North Platte, Nebraska has nothing to gain, and perhaps much to lose, if it falsely accuses its local patrons of possessing child pornography.  See e.g. <u>State v. Spidel</u>, 10 Neb. App. 605, 616, 634 N.W.2d 825, 835 (2001)(noting

---

[2] Neither Tracey Sundstrom's gender nor the correct spelling of his name is consistent in the record; for the sake of consistency, I have used the masculine pronouns and the more frequently used spelling.

[3]Arnold, Nebraska is located in Custer County, Nebraska. Custer County is adjacent to Lincoln County, Nebraska, where Pro Computing is located.

that the fact that the informant was defendant's employee
supported finding the informant was acting openly and motivated
by good citizenship).

"We here deal with a citizen informant with no motive to
falsify, rather than a professional informant, with attendant
credibility concerns." <u>Ross</u>, 713 F.2d at 393.  Investigator
Eng's warrant affidavit was not deficient for lack of evidence
demonstrating that Sundstrom and Lewis were credible informants.

2.  <u>What "type" of alleged child pornography Lewis claimed was on
the computer</u>.

The defendant's brief is silent on what is meant by this
challenge.  First, it does not explain the word "type."  It might
refer to the medium of the "pornography," i.e., whether it is
printed material, computer files, videos, or something else.  It
might also refer to the acts depicted in the materials.  It might
also refer to the persons depicted in the materials.  It might
also refer to whether those persons are "real," "virtual," or
"morphed."[4]  It might also refer to the ages of the persons
depicted.

Second, defendant has not, either in the motion or the brief
in support of it, cited any authority for the proposition that
the "type" of child pornography makes any difference in the

---

[4]  See <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234
(2002). Pictures of actual children, and those of actual but
unknown children's bodies being "morphed" with the head/face of
an identifiable child, can be proscribed regardless of their
obscenity; images of "virtual" children, however, (images that
are computer created and do not depict any real person), could
not be proscribed.  <u>Id</u>. at 249-250, 256.

assessment of probable cause.  Nor has the court found any such authority.

Third, by not addressing this challenge in the brief, defendant has abandoned it.  NECrimR 12(b))(1).

I conclude this challenge is without merit.


3.  <u>How Lewis knew, or on what bases he believed, that what he found was "child pornography."</u>

The defendant claims the affidavit was deficient for failing to describe anything about the alleged "child pornography" located on the computer.  In describing the allegedly unlawful images, Investigator Eng's affidavit merely states that "child pornography" was reportedly found; there is no statement as to the number of images, no description of specific images, and no statement of the estimated ages of those depicted or the acts they appear to be performing.  Copies of the images were not provided to the issuing judge for review in consideration of the warrant request.  The application is also silent as to how Lewis knew or believed that what he saw was "child pornography," and is also silent as to any basis for Investigator Eng's implicit adoption of that characterization.

The First Circuit has held that this type of warrant application to search for child pornography provides an insufficient basis for a probable cause finding.  <u>United States v Brunette</u>, 256 F.3d 14 (1st Cir. 2001).  <u>Brunette</u> held that a judge reviewing a warrant application cannot ordinarily decide whether an image falls within the statutory definition of child

pornography without either looking at the allegedly pornographic
images, or at least reading a detailed, factual description of
them.  Brunette, 256 F.3d at 18.  Brunette found that an agent's
affidavit statement describing the image depicted as "a
prepubescent boy lasciviously displaying his genitals" was a
"conclusory statement" and a "bare legal assertion" insufficient
to support a probable cause finding.

> It was error to issue the warrant absent an independent
> review of the images, or at least some assessment based
> on a reasonably specific description.  Ordinarily, a
> magistrate judge must view an image in order to
> determine whether it depicts the lascivious exhibition
> of a child's genitals.

Brunette, 256 F.3d at 19.  The holding in Brunette was recently
reaffirmed by the First Circuit in United States v. Syphers, 426
F.3d 461 (1st Cir 2005), which held:

> A court reviewing a warrant application to search for
> pornographic materials ordinarily is unable to perform
> the evaluation required by the Fourth Amendment if the
> application is based on allegedly pornographic images
> neither appended to, nor described in, the supporting
> affidavit.  Ideally, copies of such images will be
> included in all search warrant applications seeking
> evidence of child pornography crimes.  If copies cannot
> feasibly be obtained, a detailed description, including
> the focal point and setting of the image, and pose and
> attire of the subject, will generally suffice to allow
> a magistrate judge to make a considered judgment.

Syphers, 426 F.3d at 465 (citing Brunette, 256 F.3d at 20).

Brunette's reasoning was based on the Supreme Court's
holding in New York v. P.J. Video, Inc., 475 U.S. 868 (1986).  In
P.J. Video, the Court addressed the level of evidence required to
establish probable cause to issue a warrant to search for

allegedly obscene films.  P.J. Video held that despite the First
Amendment considerations applicable to such cases, a common sense
evaluation of the warrant application remains the standard, and
noted that an issuing magistrate judge need not "personally view
allegedly obscene films prior to issuing a warrant authorizing
their seizure," but can instead rely upon "a reasonably specific
affidavit describing the content of a film. . . ."  P.J. Video,
475 U.S. at 874 n. 5.  Brunette applied this evaluative process
to warrants to search for child pornography, while nonetheless
acknowledging that "child pornography falls 'outside the
protection of the First Amendment.'"  Brunette, 256 F.3d at 17 n.
1 (citing New York v. Ferber, 458 U.S. 747, 763 (1982)).

     The Second and Ninth Circuits recognize that the
"significant distinctions between obscenity and material
criminalized because it involves the sexual exploitation of
children" distinguishes the standards required for warrant
applications to search for obscene materials from those submitted
to search for child pornography.  "[C]hild pornography may be
banned regardless [of] whether it fails the test for obscenity."
United States v. Jasorka, 153 F.3d 58, 60 (2nd Cir. 1998).  See
also United States v. Smith, 795 F.2d 841, 847 n. 7 (9th Cir.
1986)(noting "the difference in constitutional requirements
between child protection and obscenity statutes also results in
different requirements for an affidavit supporting a warrant
under the respective statutes").

     In contrast to Brunette, the Eighth Circuit has found
sufficient probable cause to support a warrant to search for
child pornography in a case where the warrant application did not
provide either a detailed description of the images of alleged
child pornography depicted or a copy of the images.  United

8

States v. Chrobak, 289 F.3d 1043, 1045 (8th Cir. 2002).  In
Chrobak, the FBI identified the defendant's computer as one that
had sent "undisputed"[5] child pornography to a known child
pornography/pedophile website.  An FBI Special Agent, after
describing her training and experience in investigating cases
involving child pornography and the sexual exploitation of
children, stated in the warrant application that she had viewed
fourteen images and summarily described them as "graphic files
depicting minors engaged in sexually explicit conduct. . .
involving children under the age of 16," but she did not provide
the images to the magistrate judge to whom the application was
made.

   Chrobak held the warrant application provided a sufficient
probable cause showing.  The court reasoned that unlike a
characterization of an image as merely "obscene," the agent's
description of "children engaged in sexually explicit conduct,"
that is, using the applicable statutory language (18 U.S.C.
§2252), is a statement of fact and not simply an unsupported
personal opinion.  "There are very few pictures of actual
children engaged in sexual acts that are not child pornography, .
. . so it is unlikely the magistrate judge [if presented with the
images] would have disagreed that the images constituted child
pornography."  Chrobak, 289 F.3d at 1045.  See also, United
States v. Hall, 142 F.3d 988, 995 (7th Cir. 1998)(holding that a
warrant application was sufficient where a computer repair
technician stated he saw approximately 1,000 files in the
defendant's CPU with names indicative of child pornography, had
viewed three to five files depicting minors "engaged in sexual
activity," and had described at least two of those depictions to

_____

      [5] No further description is in the opinion.

the officer); Smith, 795 F.2d at 847 (finding probable cause to issue a warrant where the postal inspector's application stated the photos depicted three juvenile girls engaged in "explicit sexual conduct"); State v. Steele, 2005 WL 516526, *5 (Ohio App. 12 Dist. 2005)(refusing to follow Brunette, distinguishing its holding, and finding probable cause where the affiant officer averred that the computer hard drive contained a significant amount of "images involving children engaged in sexual activity").

In contrast to these cases, Investigator Eng's affidavit does not describe any images at all, much less images of "minors" or "children" who were "engaged in sexual activity" or "engaged in sexually explicit conduct."

In the context of discussing whether a warrant itself was sufficiently particular, that is, whether the language in the *warrant* sufficiently limited the executing officers' search, the Eighth Circuit has held that language authorizing officers to search for a specific envelope that would be delivered to defendant in a controlled delivery, the contents of which had already been graphically described in the warrant application, and also describing other materials to be seized, using verbatim the statutory definition of "sexually explicit conduct," was adequate to convey to the officer executing the search warrant the nature of the material sought. United States v. Koelling, 992 F.2d 817, 821-22 (8th Cir. 1993). Further responding to the defendant's argument that the warrant was insufficiently particular because the officers might seize adult pornography protected by the First Amendment, the court said:

10

> The terms "child pornography" and "minors" as used in
> the affidavit and the warrant are not so uncertain as
> to make the warrant defective, even though the
> reference to "minors" or "children" might infrequently
> permit the mistaken seizure of "adult pornography."
> The fact that some adults look like minors and some
> minors look like adults does not mean a warrant is
> overbroad.  Most minors look like minors and most
> adults look like adults, and most of the time most law
> enforcement officers can tell the difference.  The
> Constitution requires no greater precision.

Koelling, 992 F.2d at 822.  See also United States v. Kimbrough,
69 F.3d 723, 727 (5th Cir. 1995)(particularity challenge in which
the court found the warrant sufficiently limited the executing
officers' authority by listing a number of items authorized to be
seized, qualified by the language, ". . . used to visually depict
a minor engaging in sexually explicit conduct . . . ."); United
States v. Hurt, 808 F.2d 707 (9th Cir. 1987) (particularity
challenge, stating "[a]ny rational adult person can recognize
sexually explicit conduct engaged in by children under the age of
16 when he sees it."  Hurt, 808 F.2d 708 (emphasis in original).


    The probable cause question in this case is whether, when
considered in the context of Investigator Eng's entire affidavit,
the mere statement[6] that "child pornography" was reportedly seen
by a computer technician in a computer's files was sufficient to
issue a search warrant.  With all due respect to the state court
judge who issued the warrant, I conclude it was not.

---

    [6] While initially the statement was at least three-tier
hearsay, Inv. Eng did meet with Sundstrom, and it was he who
actually reported that Lewis had seen these images.  There was no
statement, though, of what Lewis actually said or said he saw;
all information was gathered only from Sundstrom without
interviewing Lewis at all.

Particularly troubling is the use of the undefined term
"child pornography" to describe the images reportedly seen,
combined with the complete lack of any corroborating evidence.
The affidavit states that Lewis had seen what he thought was
adult pornography in other computers, but believed he saw "child
pornography" in Grant's computer.  What he considered
"pornographic," however, is not disclosed for either adult or
child "pornography."[7]  Without perspective or context--which,
unlike this case, was amply provided in the affidavit at issue in
<u>Koelling</u>--the word "pornography" has become essentially
meaningless in today's lexicon of alarmist rhetoric.[8]  Because of
this lack of perspective or context, this statement from a
layperson is simply an individual's reactive opinion; it does not
establish any, much less a "'fair,' probability" that evidence of
a crime has been seen by the informant and will be found on the
subject computer.  <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983).

This affidavit did not add any facts or descriptions to
support Lewis's reported conclusion.  Was the material printed
photos found in the case housing the CPU?  Digitized photos on
the computer?  Video?  Was it prose without pictures?  If images,

---

[7] Neither does the affidavit describe the perspective from
which Lewis judged what he saw.  Is he an overzealous crusader
who thinks the revealing of any part of anyone's body is
pornographic; a former or current law enforcement officer
specifically trained and/or experienced in ferreting out child
exploitation crimes and reviewing claims of "sexually explicit
conduct"; or someone between these extremes? See, e.g. "Calvin
Klein:  A Case Study" at
<u>www.media-awareness.ca/english/resource/educational</u>
handouts/ethics/calvin_klein_case_study.cfm  (reporting the
company's use of scantily clad children and teens in its
advertising and the public uproars it caused with people labeling
the ads "pornographic").

[8] See the case study noted in the previous footnote.

how old were the people portrayed?  How did he know?  What were
they wearing?  What were they doing?

In addition, there is nothing presented in the affidavit
which ties this defendant to this computer, other than that his
wife brought it to the repair shop.  Unlike other cases, no
investigation was conducted to determine if it was used in any
internet-facilitated acts like communicating with minors and/or
downloading images from known "child porn" sites, nor any
investigation to determine who, among the residents of the
household, employees in a business,[9] or others, had access to the
computer, nor who the user was.

There was no rush here.  No exigent circumstances existed.
The computer was in the possession of a disinterested third
party; it was not going to be shredded or flushed down a toilet
while law enforcement officers investigated further.

The government has not cited, and I have not found, any
Eighth Circuit cases in this area that do not include at least
some "facts" supporting the affiant's conclusions.  See, <u>United
States v Bach</u>, 400 F.3d 622, 624-25 (8th Cir. 2005)
(Investigators' experienced in preparing cases of sexual
exploitation of minors; computer communications and subscription
information leading to defendant; defendant's status as a
registered sex offender with conviction of third-degree sexual
assault based on sex with a fourteen-year-old boy; interview with
minor boy who had communicated with defendant via internet;

---

[9] Sundstrom reported to Eng that Lewis had "worked on
several home computer processing units," but there is no
statement that this was a "home" computer, nor that Marsha Grant
had brought it from home, and if so, whether it was new or used,
and how long it had been there.

13

identification photo of defendant; defendant's email
communications with minors including one with a "morphed" picture
of a young boy with an erection); <u>Koelling</u> (affiant/
investigator's training and experience; citizen informant
provided pictures; pictures graphically described; affiant's
investigation revealing that one of the boys in one picture was a
14-year-old who lived near defendant's residence; defendant
identified as the adult male depicted in some pictures with young
male with erect penis; defendant falsely claimed to be a non-
existent "Mrs. Dale Koelling"; defendant was unmarried and
believed to be a homosexual with preference for "young boys"; and
<u>Chrobak</u> (probable cause existed where law enforcement had located
alleged child pornography on the "Pedo University" internet site,
a site frequented by child pornographers and pedophiles,
determined the site was registered to the defendant, and the
agent reviewing the images described them as "depicting minors
engaged in sexually explicit conduct involving children under the
age of 16").  See also <u>United States v. Simpson</u>, 152 F.3d 1241,
1247 (10th Cir. 1998)(holding warrant application was minimally
sufficient where the affiant officer described defendant's
agreement to send a computer diskette with "numerous scenes of
prepubescent children under the age of thirteen" in exchange for
a videotape containing scenes of "child pornography," and further
stated the defendant frequented an internet chat room designated
as "# sexpicshare # % % kidssexpics").  No case found has gone so
far as to require for the showing of probable cause any facts
establishing that the offensive material depicts "real" persons
or any explanation to the issuing judge of the various means of
creating computer images,[10] but all require *some facts* supporting

_____

        [10] See <u>Ashcroft v. Free Speech Coalition</u>, 535 U.S. 234
(2002) (Pictures of actual children, and those of actual but
unknown children's bodies being "morphed" with the head/face of

14

the affiant's conclusions.  Plaintiff has cited no case, and I have found none, in which an affidavit similar to the one at issue here has been found to be sufficient to establish probable cause.

Under the totality of the affidavit presented, I conclude Investigator Eng's warrant application failed to present a sufficient showing of probable cause to support the search. Investigator Eng's "bare bones" affidavit provided the issuing judge with no facts supporting the conclusion, "child pornography.  In fact, it is difficult to imagine an affidavit in support of a search warrant application with less information. The affidavit reflects little more than a hunch that might trigger additional investigation.  It is woefully insufficient to show a "fair probability" that evidence of a crime would be found on the defendant's computer.   That, however, is not the end of the matter.

<u>United States v Leon</u>.

The government argues that the search should be upheld because Investigator Eng "reasonably believed that the search warrant was executed and issued properly by the county court. He indicated to the county court that child pornography was believed

---

an identifiable child, can be proscribed regardless of their obscenity (<u>id</u>. at 249); images of "virtual" children, however, (images that are computer created and do not depict any real person), could not be proscribed, <u>id</u>. at 250, 256.  I have seen no authority for the proposition that an affiant must present facts establishing–or that an issuing judge must find–the true nature of the images in the calculation of probable cause; indeed, there is some doubt that a convicting jury must make such a finding so long as it finds the images to involve, at least to some extent, "real" children.  See, <u>United States v. Bach</u>, 400 F.3d 622 (8th Cir. 2005).

to be on the computer, and verified the existence of the computer, where the computer was at [sic], the reliability of the individual making the claim, and the basis for the individual's conclusion."  Plaintiff's brief pp 4-5.  Plaintiff also notes that the reporting technician differentiated between "adult" and "child" pornography.  Id., citing United States v. Vinson, 414 F.3d 924, 930 (8th Cir. 2005) (Confidential informant's history and corroboration of his report by independent investigation established informant's reliability and his report of witnessing drug transactions could be deemed credible and useable in the calculation of probable cause; even if affidavit had been insufficient, which it wasn't, the executing officer acted in objective good faith).

The government's argument is not factually completely accurate.  Contrary to the statements quoted above, there was no assertion in the affidavit concerning the "reliability" of either Tracey Sundstrom or David Lewis.  Nor does the affidavit disclose any information at all about a "basis for the individual's conclusion."  As discussed above, however, citizen informants are, as a matter of law, assumed to not give officers incorrect information, especially when it may do them harm; it was that assumption that allowed their reports to be considered, not some assertion in the affidavit or judgment by Eng.  Further, there was no statement at all giving any "basis for the individual's conclusion."

Even if a warrant application is deemed deficient in hindsight, evidence need not be suppressed if the police acted in objective good faith reliance on a search warrant issued by a neutral and detached judge.  Leon, 468 U.S. 897, 922-23.  If a warrant is in proper form, "[a]bsent allegations that the issuing

16

judge was not neutral, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." United States v. Terry, 305 F.3d 818, 823 (8th cir. 2002).

The defendant has made no showing that Investigator Eng misled the issuing judge by excluding material information or including information in his affidavit that he knew was false or would have known was false except for his reckless disregard for the truth. United States v. Carpenter, 341 F.3d 666, 669 (8th Cir. 2003). Nor is there any allegation or evidence that the issuing judge "wholly abandoned his judicial role" by acting as a "rubber stamp" for the police or as an "adjunct law enforcement officer." Carpenter, 341 F.3d at 669 (citing Leon, 468 U.S. at 923). Rather, in arguing that the good faith exception does not apply in this case, the defendant focuses on the third Leon exception.

"[W]here a warrant is 'based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence *entirely unreasonable*,' an officer cannot 'manifest objective good faith in relying on the warrant.'" Carpenter, 341 F.3d at 669 (emphasis in original)(quoting Leon, 468 U.S. at 923). As noted in Carpenter, the phrase "entirely unreasonable" is not a phrase used often by the Supreme Court, and nothing in Leon or the Court's later opinions justifies diluting the Court's particularly strong choice of words. Carpenter, 341 F.3d at 669.

In Leon the Court used a "cost benefit analysis" in charting the limits of the exclusionary rule. In determining the "limits" beyond which reviewing courts should not go in enforcing other

judges' decisions on the quantum of evidence constituting
"probable cause," it accorded deference to the judge who issued
the warrant, as well as to the officers executing it, so long as
doing so would continue to further the ends of the exclusionary
rule:

> "Excluding the evidence [in a case where the officer's
> conduct is objectively reasonable] can in no way affect
> his future conduct unless it is to make him less
> willing to do his duty." <u>Stone v. Powell</u>, 428 U.S. at
> 539-540 (White, J. dissenting).  This is particularly
> true, we believe, when an officer acting with objective
> good faith has obtained a search warrant from a judge
> or magistrate and acted within its scope.  In the
> ordinary case, an officer cannot be expected to
> question the magistrate's probable-cause determination
> or his judgment that the form of the warrant is
> technically sufficient."  [O]nce the warrant issues,
> there is literally nothing more the policeman can do in
> seeking to comply with the law." <u>Id</u>., 428 U.S. at 498,
> (BURGER, C.J., concurring).  Penalizing the officer for
> the magistrate's error, rather than his own, cannot
> logically contribute to the deterrence of Fourth
> Amendment violations.

468 U.S. at 920-21.  In balancing costs and benefits to effective
law enforcement and whether expanding or contracting the
exclusionary rule might result in confusion of law enforcement
officers, the court noted:

> Grounding the modification in *objective reasonableness*,
> however, retains the value of the exclusionary rule as
> an incentive for the law enforcement profession as a
> whole to conduct themselves in accord with the Fourth
> Amendment." <u>Illinois v. Gates</u>, 462 U.S., at 261, n. 15
> (WHITE, J., concurring in judgment); see <u>Dunaway v. New</u>
> <u>York</u>, 442 U.S., at 221 (STEVENS, J., concurring). *The*
> *objective standard we adopt, moreover, requires*
> *officers to have a reasonable knowledge of what the law*
> *prohibits.*

<u>Id</u>. at 919, n. 20 (Emphasis Added).

18

If judges "can look at the same affidavit and come to differing conclusions," that certainly is a major factor in deciding whether the police officer's reliance on the warrant affidavit "must be reasonable."  United States v. Simpkins, 914 F.2d 1054, 1058 (8th Cir. 1990).  Law enforcement officers are not required to regularly "second-guess" the conclusions of judicial officers, but they are required to think about it in reference to their own training on search warrants and facts necessary to establish probable cause:

> It is a sound presumption that the magistrate is more qualified than the police officer to make a probable cause determination, and it goes without saying that where a magistrate acts mistakenly in issuing a warrant but within the range of professional competence of a magistrate, the officer who requested the warrant cannot be held liable. But it is different if no officer of reasonable competence would have requested the warrant, i.e., his request is outside the range of the professional competence expected of an officer.  If the magistrate issues the warrant in such a case, his action is not just a reasonable mistake, but an unacceptable error indicating gross incompetence or neglect of duty.  The officer then cannot excuse his own default by pointing to the greater incompetence of the magistrate.

Malley v. Briggs, 475 U.S. 335, 346 n. 9 (1986).  The officer should make this assessment considering the totality of the circumstances.  "[T]he determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause . . . will often require examination of the information possessed by the searching officials [but not reported in the affidavit presented to the judge]."  United States v. Martin, 833 F.2d at 752 (8th Cir. 1987), cert denied, 494 U.S. 1070, quoting Anderson v. Creighton, 483 U.S. 635, 641 (1987).  In this case, although the court may hear evidence outside the four corners of the affidavit in determining the

19

reasonableness of the officer's reliance on the issuance of the warrant, the government has not mentioned or argued any such evidence, nor requested an evidentiary hearing.

Having reviewed the warrant affidavit carefully, I conclude Investigator Eng's affidavit was so deficient that "no officer of reasonable competence would have requested the warrant," (<u>Malley</u>, 475 U.S. at 346  n. 9), and the officer's belief in the existence of probable cause, even though accepted by the issuing judge, was "entirely unreasonable."  I think it is reasonable to expect that a "reasonably well trained officer" with thirteen years of experience in applying for search warrants can be expected to know that his recitation of facts in the affidavit here contested was totally insufficient to establish probable cause, and he should not present such a deficient affidavit to a judge in applying for a search warrant.  It is reasonable for courts in reviewing a search warrant to require officers to know they must present *facts* and not mere conclusions in their warrant applications in order to comply with the Fourth Amendment.

While obviously I disagree with the issuing judge on the assessment of probable cause, I do not think that disagreement rises to the standard of the Eighth Circuit mentioned above. <u>Martin</u>, 833 F.2d at 756.  The county judge who issued the warrant is well respected and, I am sure, very thoughtful.  All of us, however, make mistakes from time to time; I would hope that if I did the same thing, another judge would catch my mistake.  The Fourth Amendment would be the better for it.  Under these circumstances, though, the officer's reliance on the judge's determination of probable cause was not objectively reasonable.

Further, I think that application of the extreme sanction of exclusion would be appropriate in this case.  The ends of the exclusionary rule would be served in requiring law enforcement officers to carefully assess the facts they have gathered--that is, to require *some* facts--and not accept at face value a lay opinion unsupported by any facts, before presenting an affidavit to a judge seeking a warrant to search a computer for child pornography.  The government has cited no authority, and I have found none, for the proposition that a judge may find probable cause *soley* on the unsupported conclusion of a lay person who has not been shown to have any knowledge about the legal standards involved.   In addition, this affidavit was presented to the county judge in September 10, 2003.  That is considerably after the Supreme Court decided <u>Ashcroft</u> (April 16, 2002) in which it dealt forthrightly with the definitions of child pornography in the Child Pornography Prevention Act, striking some of them as unconstitutional, a ruling met with considerable public comment.[11]  Finally, this officer had considerable experience in law enforcement and in applying for warrants in particular; he should have known that care must be taken when applying for a warrant in a child pornography case, and he should have known that the meager showing in his affidavit would be insufficient.

I conclude that <u>Leon</u> does not apply to save this search warrant, and the material seized should be suppressed.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C.

---

[11] I do not wish to imply that the officer should be knowledgeable about the law; rather, I cite this case as an example of a public discussion of the seriousness of the child pornography problem and that special care must be taken in gathering facts pertaining to such cases.

21

§636(b)(1)(B), that the defendant's motion to suppress, filing 24, be granted.

The parties are notified that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of any right to appeal the district judge's adoption of this recommendation.

IT IS FURTHER HEREBY ORDERED:  Trial is set for 9:00 a.m. on April 10, 2006 for a duration of three trial days before the Honorable Richard G. Kopf.  Jury selection will be at the commencement of trial.

DATED February 9, 2006

BY THE COURT:

s/ *David L. Piester*

David L. Piester
United States Magistrate Judge

22