IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,      )
                              )
            Plaintiff,     )             4:05CR3105
                              )
        v.                     )
                              )
GERALD GRANT,               )      REPORT, RECOMMENDATION
                              )           AND ORDER
            Defendant.    )
                              )

      I previously recommended that the pending motion to suppress be granted. Report, Recommendation, and Order, February 9, 2006, Filing 29, 2006WL680880. After an objection to the recommendation was filed by the government, the recommendation was not accepted by the district judge; instead, he remanded the matter to me for an evidentiary hearing and findings under United States v. Leon, 468 U.S. 897 (1984) on the question of "why a reasonable police officer standing in the shoes of Eng would not have reasonably understood that 'child pornography,' when used by David Lewis or when used in Eng's affidavit or when used in the judge's warrant, referred to 'child pornography' within the meaning of the Child Pornography Prevention Act, Neb Rev. Stat. Ann. §§ 28-1463.01 et seq. (LexisNexis 2003). The Magistrate Judge should also take evidence regarding and describing the nature of the images that were actually seized." Memorandum and Order, March 13, 2006, filing 34.

      That hearing was held before me on April 5, 2006. One witness, Nebraska State Patrol Investigator Gary Eng, testified, and the court received in evidence, under seal, a computer compact disk containing the items seized on the defendant's computer when the warrant was served and executed. (Exhibit 1). The court also took judicial notice of the application and

warrant at issue, previously filed, and also the provisions of the Nebraska Child Pornography Prevention Act, <u>Neb. Rev. Stat</u>. §§ 28-1463.01 <u>et seq</u>. ("Act").


<u>FACTS</u>


Investigator Eng testified that he has been employed with the Nebraska State Patrol ("NSP") for twenty-two years,[1] including ten years as a drug investigator between 1990 and 2000. Since April, 2000 he has been an investigator in the criminal investigations division of NSP.  Prior to the application for this search warrant on September 10, 2003 Investigator Eng had never been the "chief case agent" in a child pornography case, that is, the officer to get a warrant, execute it, and draw up appropriate reports.  This application was the first time he had ever been the applicant-affiant in requesting issuance of a search warrant in a child pornography case.  In fact, he testified that this was the first time he had ever worked on a child pornography case.  His prior NSP training did not include training in investigating child pornography cases.   As a drug investigator, however, he has applied for "countless" search warrants.  In addition, he has received NSP training in the general requirements for applications for search warrants, and knows that the affidavits supporting such applications were required to set forth "facts," and were not to be "bare bones."

---

[1] His affidavit in support of the warrant application stated that he had been a sworn law enforcement officer since June, 1984, and that he had "been involved in numerous Search Warrant [sic] as the Affiant in the past 13 years."  Filing 24.

At the relevant time Investigator Eng was stationed in
Broken Bow, Nebraska, in Custer County.  During the evening of
September 9, 2003 he received a telephone call from Custer County
Deputy Sheriff Tyler Shea.  Shea had received a telephone call
from a woman in nearby North Platte, Nebraska (Lincoln County)
reporting that an employee in her computer repair shop had found
what he believed was "child pornography" on a computer that had
been brought in for repair by a resident of Custer County.  The
caller, Tracey Sundstrom, operated a computer repair business in
North Platte called "Pro Computing."  According to Shea, she did
not give him any description of the materials that were believed
to be "child pornography."  Shea called Eng to request that NSP
investigate the matter, as the computer was not in Custer County,
and he thus had no jurisdiction to pursue it.

The next morning Eng visited Pro Computing and met with
Tracey Sundstrom.  The conversation began at approximately 9:30
a.m. and lasted approximately fifteen to thirty minutes.
Sundstrom reported that the computer had been brought to the
store by Marsha Grant, the defendant's wife.  She also reported
that one of her computer technicians, David Lewis, had reported
to her the day before that he had found what he thought was
"child pornography" on that computer.  His report to her did not
include any description of the materials he had found.  However,
she reported to Eng that Lewis, as well other "techs," had
reported finding "adult" pornography on other computers in the
past, but she'd never received a report of any "child
pornography" being found on other computers.  In contrast, Lewis
had reported to her that he believed what he found on this
computer was "child pornography."  Eng did not ask her how Lewis
had reached that opinion; rather, he testified, "She said it was
child pornography and I took her at her word, had no reason to

3

doubt" it.  Eng was not aware of any prior occasions in which this business had made any reports of child pornography being found on any computer.

Sundstrom told Eng she felt she had a "duty" to report this to law enforcement, and Eng inferred that she had some unspecified fear of liability in the matter.  She also reported that Lewis had told her that Gerald Grant had telephoned the store twice[2] since the computer was brought in, inquiring when it would be ready to pick up.  During one of these calls, Grant had told Lewis that there were some "raunchy" pictures on the computer and he wanted them "saved" on the computer.

During this conversation Sundstrom did not offer to show the materials found to Eng, and Eng did not ask to see them, believing such would constitute a search and he should have a warrant.  She also did not describe the materials in any way.

David Lewis, the reporting employee, was not at the store during Eng's visit, so Eng did not talk with him.  Eng testified that he did not attempt to contact Lewis before applying for the search warrant, because (1) Lewis was not in the store; (2) Lewis lived approximately ten miles away; (3) Eng wanted to hurry because the Grants had called inquiring when the computer could be picked up; and (4) Eng thought because of the calls the computer might be removed from the store.  He did not ask Sundstrom whether the computer had been "promised ready" for pickup by the Grants at a particular time, nor if so, when.  He did not ask Sundstrom for Lewis's telephone number.

_____

[2]  At one point Eng testified that the Grants had called "twice."  Another time he testified they had called "on several occasions."

4

Regarding the term "child pornography," Eng testified that although he hadn't asked Sundstrom to state what she meant by "child pornography" or to differentiate between "adult" and "child" pornography, or any questions using terminology from the Act's definitions, he agreed with the prosecutor's question, that her comments to him did not indicate that she meant "anything. . .inconsistent" with the term "child pornography" as defined in the Act.

Following this conversation Eng went to the North Platte office of NSP and began preparing an application for a search warrant to search the computer.  In doing so he did not request or receive assistance from any attorney or senior NSP officer. He testified that he used the term "child pornography" as it is defined in the Act, as he had no reason to think otherwise.  He acknowledged, however, that he had not read the statute for at least six months.

Eng had had prior experience working with the judge who issued the warrant in this case, County Judge Kent D. Turnbull. Judge Turnbull was formerly the county attorney, and Eng had worked with him in that capacity prosecuting several cases arising from warrants Eng had executed.  County Attorney Turnbull had not reviewed any warrant applications prepared by Eng during those years.  Since Judge Turnbull had taken office as a county judge, Eng had applied to him for warrants three or four times. On at least one prior occasion Judge Turnbull had turned down his application for a warrant, advising Eng that he needed more information or a better description.  Eng then re-typed the application and re-applied.

Eng took the warrant application and warrant to Judge Turnbull's office. The judge placed him under oath and asked him if all the facts in the affidavit were true. Eng stated "yes," and Judge Turnbull signed the warrant. The judge did not ask Eng any questions, and never requested a description of the materials or to see any of them. This was not inconsistent with Eng's prior experience applying to Judge Turnbull for warrants. There was no discussion regarding the definition of "child pornography," and Eng again agreed with the prosecutor's question that nothing in their conversation indicated to Eng that the judge was taking the term as meaning "anything other than" how it was defined in the Act. Eng did not ask the judge anything about that, however. In fact, except when the judge asked Eng to swear to the truth of the matters in his affidavit, there was no evidence that either man asked any questions of the other concerning the factual sufficiency of the affidavit.

Investigator Eng then went back to the NSP offices to make copies of the application and warrant, after which he went to Pro Computing to execute the warrant, arriving at approximately 1:30 p.m. The computer was seized at that time.[3]

---

[3] The undersigned was directed by the order of remand to "take evidence regarding and describing the nature of the images that were actually seized." Memorandum and Order, March 13, 2006, filing 34. A compact disk containing the materials was received in evidence under seal. Because of the order, I felt obligated to view the materials, and I have done so. I do not consider them relevant to the inquiry before the court, however, because the evidence establishes that they were not seen by or even described to Investigator Eng prior to his executing the warrant. Thus, they can have had no influence whatsoever on the reasonableness of his good faith *at the time he received the signed warrant and executed it.*

Investigator Eng did not write a report of this
investigation, because he had put everything that had happened in
his affidavit presented to Judge Turnbull, and he saw no need to
"duplicate" it.

Eng also testified that he had no concerns that his
affidavit had insufficient facts to establish probable cause; nor
that his affidavit was a "bare bones" application; nor from the
judge not inquiring about terms used in the affidavit; nor from
the fact that the judge did not ask him anything about the
definition of "child pornography" under the Act.  To the
contrary, the fact that the judge did not ask such questions led
Eng to infer that the judge was knowledgeable about the Act and
its proper application.  Eng also stated that he was impressed
with the fact that Tracey Sundstrom was concerned enough about
her responsibility as a concerned citizen that she would take
time to call "long distance" to the sheriff's office in a
neighboring county to report the information she had received.

From the evidentiary hearing the following additional facts
emerged that were not clear from the previous record:

- Although Investigator Eng has had extensive experience
  in applying for "countless" search warrants in other
  types of cases, he had not, prior to this case, had any
  experience working on child pornography cases, nor
  applying for warrants in such cases, and had received
  no training from or through NSP in doing so;

- There was no evidence on when Investigator Eng had last
  had training in applying for search warrants, nor
  whether such training included the third <u>Leon</u> exception

7

to the exclusionary rule, the exception implicated in
this case;

- Investigator Eng knew from his prior training and
  experience that applications for search warrants were
  required to set forth facts, and not be "bare bones";

- Tracey Sundstrom reported to Eng that Lewis was not the
  only employee who in the past had reported finding
  adult pornography on computers brought to the shop for
  repair, but other "techs" had also so reported.  As
  with Lewis, they also had not previously reported
  finding any "child pornography" on any computers;

- Tracey Sundstrom said she reported the incident because
  she felt she had a civic responsibility or duty to do
  so;

- Tracey Sundstrom had not sought or received any
  description of the "child pornography" Lewis thought he
  found;

- All of the facts known to Eng were put in his
  affidavit;

- Eng had applied to Judge Turnbull for search warrants
  three or four times in the past, and on one of those
  prior occasions the judge had advised him his affidavit
  needed more information or a better description, but
  the judge made no such comment in this case;

- Eng's investigation began at approximately 9:30 a.m. on September 10, 2003 and culminated in seizing the computer at approximately 1:30 p.m. the same day;

- In completing his investigation, Eng did not:

  - Receive or attempt to get any description of the material Lewis had labeled "child pornography";

  - Ask Sundstrom what she meant by "child pornography" or what she thought Lewis meant by that term, either in general terms or using the language of the Act's definitions;

  - Contact or attempt to contact David Lewis;

  - Investigate any prior criminal records or contacts with law enforcement of Gerald or Marsha Grant, David Lewis, or Tracey Sundstrom;

  - Attempt to contact Gerald or Marsha Grant;

  - Read the Act;

  - Inquire of Sundstrom whether the computer was "due" to be picked up at a certain time, nor when the Grants' phone inquiries had been received, nor how "urgent" they were, nor ask Sundstrom to devise a way to "stall" if the Grants appeared at the store to retrieve it before a warrant could be obtained;

  - Request assistance from any attorney or senior officer in writing his affidavit to be submitted to the issuing judge;

  - Write a report of his investigation.

- There was no "clarifying" or "amplifying" discussion between Eng and Judge Turnbull when Eng presented his application for the warrant;

9

- There was no reason for Eng to think that Judge Turnbull did not have full understanding of the Act, its requirements, and its application to the facts presented in Eng's affidavit;

- Eng relied on the judge's signature issuing the warrant in believing the affidavit was sufficient to establish probable cause;

- All of Eng's actions were taken in subjective "good faith"; that is, he had no concern that he was doing anything inadequate or improper in carrying out this investigation.

Some of this information is relevant to determining the reasonableness of Eng's "good faith," and some, not.  For example, Eng testified that he did not attempt to contact the Grants so as not to "tip them off" that the computer's contents were under investigation, a perfectly reasonable approach.  On the other hand, his admissions that a search warrant application must contain "facts" and that "all" of the facts he knew were put in his affidavit (so obviating the need for writing a report) may reflect on the reasonableness of his lack of concern for this affidavit's sufficiency.


DISCUSSION

At the evidentiary hearing the government did not reassert its earlier argument that the warrant at issue was sufficient to establish probable cause, based on a reading of Judge Kopf's memorandum and order which it interpreted as requesting

10

additional evidence only on the good faith issue, an interpretation with which I agreed.  The government did not, however, abandon that argument.  I therefore address that issue only briefly, and then proceed to the applicability of the third exception of <u>Leon</u>.  For the reasons discussed below, with only a few changes,[4] I now augment my earlier recommendation and recommend, again, that the motion to suppress be granted.

Initially, it is important to note that it is not for this court to evaluate or criticize the quality of Eng's investigation.  Rather, what he did or did not do is considered here only in the context of determining whether a reasonable officer in his position would have in good faith believed the warrant was valid.

### 1.  <u>Probable Cause</u>

Relating to the issue of probable cause, the government contends that it was error in my previous memorandum to characterize "child pornography" as "essentially meaningless" in common conversation, and it cites cases in which the term was

---

[4] To the extent that the evidence from the hearing differs from that described in my earlier memorandum, that from the hearing obviously supersedes.  Two of the government's objections to my earlier opinion merit some response:  (1) The government criticizes as irrelevant the comments in the opinion regarding the lack of information concerning the place the computer was used and any ties the defendant may have to the computer; these comments are well taken, and those observations are withdrawn. (2) The government chides my characterizing Judge Turnbull's issuance of the warrant as only a "mistake" by a respected and thoughtful judge, arguing that it is therefore impossible for a law enforcement officer to *not* reasonably believe such a judge would be correct.  The context of the opinion should be obvious that use of that word was to note that the issuance of the warrant was not an act of willful violation of the Fourth Amendment; nevertheless, it was an extraordinary mistake, and the identity, esteem, or thoughtfulness of the *judge* who made it does not detract from the *mistake's* immensity.

used by law enforcement officers in the context of statutory
language and accompanied by additional descriptive information.
Lewis and Sundstrom, however, are not law enforcement officers
and provided no additional descriptive information indicating
they knew what they were talking about.  Lay persons not schooled
in the law can be expected to have varying working definitions of
that term.  The point is that in this case it is a lay conclusion
for which no basis is set forth either in the affidavit or in any
other information imparted to the officer.   The Supreme Court
has long made it clear that issuance of a warrant based only on
hearsay conclusions from non-law enforcement sources, as is the
case here, simply "will not do."  As stated in the oft-cited
Illinois v. Gates, 462 U.S. 213 (1983):

> Our earlier cases illustrate the limits beyond which a
> magistrate may not venture in issuing a warrant.  A
> sworn statement of an affiant that "he has cause to
> suspect and does believe that" liquor illegally brought
> into the United States is located on certain premises
> will not do.  Nathanson v. United States, 290 U.S. 41,
> 54 S.Ct. 11, 78 L.Ed. 159 (1933).  An affidavit must
> provide the magistrate with a substantial basis for
> determining the existence of probable cause, and the
> wholly conclusory statement at issue in Nathanson
> failed to meet this requirement.  An officer's
> statement that "affiants have received reliable
> information from a credible person and believe" that
> heroin is stored in a home, is likewise inadequate.
> Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.
> Ed.2d 723 (1964).  As in Nathanson, this is a mere
> conclusory statement that gives the magistrate
> virtually no basis at all for making a judgment
> regarding probable cause.  Sufficient information must
> be presented to the magistrate to allow that official
> to determine probable cause; his action cannot be a
> mere ratification of the bare conclusions of others.
> In order to ensure that such an abdication of the
> magistrate's duty does not occur, courts must continue
> to conscientiously review the sufficiency of affidavits
> on which warrants are issued.  But when we move beyond
> the "bare bones" affidavits present in cases such as

> <u>Nathanson</u> and <u>Aguilar</u>, this area simply does not lend
> itself to a prescribed set of rules, like that which
> had developed from <u>Spinelli</u>.  Instead, the flexible,
> common-sense standard better serves the purposes of the
> Fourth Amendment's probable cause requirement.

462 U.S. at 239 (citations omitted).  As I concluded before, the
affidavit in this case did not present any probability, much less
a "fair probability," that evidence of a crime would be found on
the subject computer.

### 2.   <u>The Court's Inquiry</u>

The issue I am asked to address is "why a reasonable police
officer standing in the shoes of Eng would not have reasonably
understood that 'child pornography,' when used by David Lewis or
when used in Eng's affidavit or when used in the judge's warrant,
referred to 'child pornography' within the meaning of the Child
Pornography Prevention Act. . . ."

The first reason is that there was nothing in the facts
given to Investigator Eng, nor in his investigation which would
give a reasonable officer any reason to think that the term
"child pornography" as used by Sundstrom and Lewis *was* in any way
related to the Child Pornography Prevention Act.  Eng testified
that he did not inquire what Sundstrom meant by using the term,
nor what she thought Lewis meant when he reported finding it.
Eng simply "took her at her word" and assumed she was using it as
defined in the statute, although he had not recently read the
statute and did not ask her anything using its definitions.

Second, as pointed out above, the term "child pornography"
has, in *lay parlance*, no uniform factual limits.  In common
understanding it has rather a range of meanings, some of which

would not be included within the definitions of the Act.  No one knows what the term meant to Sundstrom or Lewis.

Third, the term "child pornography" is a conclusion, for which there was no basis shown in any of the information provided to or gathered by Eng, or included in his affidavit.  The term alone, without any factual context or definitional root, simply presents no knowledge about what was meant by these citizen informants in their use of it.  In the cases relied on by the government the term is used by law enforcement officers schooled in the legal meaning of the term, so it is reasonable to presume such an officer is using it in the statutory definitional sense. Indeed, in the Eighth Circuit cases, it is not used alone, but rather in conjunction with or replaced by "sexually explicit conduct," an obvious reference to the statutory meaning. Further, in those cases approving its use, there are always additional facts--descriptions of the materials, email, web sites, etc.—-which give context and a factual basis for the conclusion.  None is present in this case.

Fourth, a law enforcement officer is bound to "have reasonable knowledge of what the law prohibits."  <u>Leon</u>, 468 U.S. at 919, n.20.  The law prohibits issuance of warrants based on unsupported conclusions.  <u>Gates</u>, <u>supra</u>.  A reasonable officer would recognize that this affidavit was not adequately supported.

Finally, a reasonable officer would have some rudimentary knowledge about the state of the law and the requirements for search warrants, or seek out assistance in obtaining such knowledge.  At the time of Investigator Eng's application for the

14

warrant in this case, several Nebraska[5] and Eighth Circuit opinions had addressed the third <u>Leon</u> exception to the exclusionary rule.  Two of those cases had addressed the exception in the context of a child pornography case.

In the first child pornography case, <u>United States v. Rugh</u>, 968 F. 2d 750 (8th Cir. 1992), the Eighth Circuit applied the third exception of <u>Leon</u> in finding the actions of the officer executing a search warrant based on sixteen-month old information.  The officer was notified by Detective Bob Nalett of the San Jose, California police department on May 8, 1990 that a search of the residence of Damien Derringer there had turned up mail from an address in Excelcior, Minnesota indicating that a resident at that address, Roger Howitz, was producing and distributing child pornography, was sexually abusing his son, a thirteen-year-old boy, and that he and others had been sexually abusing the boy since he was five.  The material included a specific address, the name of the boy and letters indicating that the Minnesota abuser was planning to send the boy to San Jose to be a sexual partner of Derringer.  The letters also indicated Howitz was engaged in a nationwide child pornography distribution business, and also included "photographs of prepubescent boys exposing their genitals, and twelve-to thirteen-year-old boys

_____

[5] The Nebraska Supreme Court has adopted the same standards set forth in <u>Leon</u>, <u>State v. Pecha</u>, 225 Neb. 673, 764-65 (1987) (holding, in a case of first impression in Nebraska, that the subject "John and/or Jane Doe" search warrant was an "invalid general warrant," and rejecting the state's argument for application of the "good faith" exception to the exclusionary rule, because the warrant's defect was apparent on its face), including application of the third <u>Leon</u> exception. <u>State v. Edmonson</u>, 257 Neb. 468, 478-484 (1999) (applying a "totality of the circumstances" test and considering information outside the four corners of the affidavit, finding the officer's reliance on the warrant was objectively reasonable).

engaged in sodomy, masturbation, and oral copulation of the anus." Id. at 752.  The most recent postmark on the letters from Minnesota was 1988.  Nalett also stated that it appeared that the letters purportedly written by the boy and those written by Howitz were in fact written by the same person, an adult, and further, that a check of postal records indicated that a person name Howitz lived at the specific return address in Minnesota.

Before seeking a search warrant later in the day, Minnesota police verified that vehicles parked at the residence were registered to defendant and his roommate; the property was owned by defendant; the phone was registered in defendant's name; local school records did not include the name given as the son's residing at that address.  The Minnesota officer obtained a search warrant to search the residence, including permission for a nighttime search because there was a possibility a child might be in danger at the address.

In affirming the district court's denial of the defendant's motion to suppress, the Eighth Circuit found that the warrant did not establish probable cause because the officers had not done anything to update the sixteen-month-old information found in San Jose.  The court also held that the Leon exception applied, because in the totality of the circumstances there was sufficient information for a reasonable officer to believe that the warrant was valid.  The court echoed the findings of the district court that (1) the officers executing the warrant reasonably could have believed a child was being abused at the home and that therefore, time was crucial; (2) the officers reasonably could have believed that a nationwide child pornography ring was being run from the residence; and (3) the officers reasonably could have believed the material from 1988 would still be present in the residence

16

because pedophiles "typically" retain child pornography for a long time.  The court found that the officers "could not be certain" the boy was not in the residence and being further abused; time between receipt of the information and the search was less critical in the case of an ongoing criminal enterprise such as a distribution ring for child pornography; and the officer's "expert opinion" that pedophiles keep child pornography for a long time was relevant and reasonable in light of the letters' assertions that Howitz had been sexually abusing his son since he was five years old and was continuing to do so.  Thus, in the totality of the circumstances the police were justified in acting in haste for the boy's safety, even though they did not believe the boy resided at the home.  Id. at 754.

In the second child pornography case, United States v. Terry, 305 F. 3d 818 (8th Cir. 2002), defendant claimed that a warrant authorizing the search of his trailer was not supported by probable cause.  Affirming the district court's finding to the contrary, the Eighth Circuit noted the information in the affidavit supporting the subject search.  A routine inventory search of defendant's truck by a person who had repossessed it turned up a videotape, photo albums, and a camcorder, among other things, and the citizen had viewed the pictures and part of the videotape and believed they contained pornography, "and that the videotape depicted the stalking and inappropriate touching of a young girl. . . ."  The citizen contacted the county sheriff and gave the materials to an officer the next day.  The albums contained "cutouts of clothed young children with sexually explicit captions next to them and magazine photographs of nude girls in their late teens. . . .  [T]he videotape showed different girls, while they were in a retail store, being followed, engaged in conversation and touched on the breasts or

17

buttocks by the person using the camcorder.  One of the girls
appeared to be approximately eight years old and another girl
gave enough identifying information on the videotape for police
officers to locate her and to confirm her age as a minor."  <u>Id</u>.
at 818.

   The citizen informed the sheriff's deputy that the defendant
lived in two residences in different counties (Warsaw and
Grandview, Missouri) but was currently living in the Grandview
residence with a couple and their minor children.  A multi-county
investigation was conducted.  It revealed that defendant had a
previous arrest for misconduct similar to that on the videotape,
and in a telephone call to the Grandview residences, a detective
recognized the voice that answered the phone was the same as that
in the videotape.  The officer prepared an affidavit for search
warrant and, after he had signed it, presented it to an assistant
prosecuting attorney, who also signed it.  The warrant was then
presented to, reviewed by, and signed by a state judge,
authorizing the search of the Grandview residence.

   All of that information was given to the officers
investigating the matter in Warsaw, where the trailer was
located.  In addition, their further investigation revealed that
the manager of the trailer park remembered having seen defendant,
small children, and toys around the trailer over the past summer.
Adding this information to that received from the Grandview
officers, another affidavit for search warrant was prepared by
the Warsaw officer and presented to the county prosecutor, who
prepared an application for a warrant.  The officer's affidavit
included a statement that "in his experience and training in the
investigation and prosecution of child sexual abuse cases,
individuals who engage in such activities tend to keep extensive

18

libraries of pornography, including possibly child pornography."
A state judge reviewed the application and affidavit and issued
the search warrant.

    After finding that the affidavit did establish probable
cause, the Eighth Circuit noted that even if the Warsaw affidavit
were insufficient, "because the Benton county officers executing
the search knew that the Benton County prosecutor and the issuing
judge found the affidavit sufficient," their reliance on the
warrant's validity was reasonable.  <u>Id</u>. at 825.

    In <u>State v. Shock</u>, 11 Neb. App. 451, 467 (Neb. App., 2002),
the Nebraska Court of Appeals relied on two of the four <u>Leon</u>
exceptions in finding the officer's reliance on the issuance of
the warrant for searching defendant's residence for evidence of
methamphetamine manufacturing to be objectively unreasonable.
The affidavit recited that the defendant had a prior criminal
conviction for manufacturing methamphetamine, when it was
actually for possessing cocaine, a misrepresentation the court
found both material and misleading.  In addition, there was
nothing in the affidavit establishing any reliability of the
confidential "Crimestoppers" tipster, nor any basis for his/her
knowledge.  Of significance to the present inquiry, there was
nothing in the affidavit which tied a long list of items found in
the defendant's garbage[6] to manufacturing methamphetamine, items

---

    [6] The trash contained the items, not the list.  It is
noteworthy that the court's opinion does not address whether a
reasonable officer in the position of the affiant in that case
(an NSP drug investigator) would have held a good faith belief
that the warrant was adequately supported by probable cause,
based on the nature of the items found, ("coffee filters stained
with a residue, a cooking thermometer, numerous strips of
aluminum foil that had a burned residue, packaging that had
contained lithium batteries, the empty casing of lithium

which are commonly reported as typical ingredients and/or
byproducts of methamphetamine manufacture.  Finally, the
affidavit was also ambiguous in that it said methamphetamine
manufacturers typically deposit the "fruits of their efforts" in
their trash.

> The affidavit in the present case reveals only that law
> enforcement received a tip, the reliability of which
> cannot be determined from the affidavit; that Shock has
> a prior felony conviction; that Shock in fact lived in
> the house searched; and that Shock's trash contained a
> long list of items, the suspect nature of which was
> never established in the affidavit. . . .

11 Neb. App. at 467.

    The Nebraska Supreme Court in State v. Davidson, 260 Neb.
417, 430-431 (Neb. 2000) concluded that the exception did apply
to an *arrest* warrant which did not set forth any basis for the
issuing judge's personal knowledge, nor any supporting affidavit
of facts establishing probable cause.  The warrant was invalid
because it did not show that the issuing judge had "personal

_____

batteries and metal strips that had been removed from inside said
casings, a two-liter plastic bottle labeled Dr. Pepper that
contained a white residue and smelled of ether, numerous used
syringses [sic], plastic tubing, receipts for containers of Heet
and suphedrine, numerous empty suphedrine boxes and empty blister
pill packs that had contained suphedrine tablets, documents
showing that Ronald E. Shock and Lucetta L. Grimm having [sic]
received mail at this residence of 164 S. 4th Street, paycheck
stubs from Ronald E. Shock, numerous empty cans of automotive
starting fluid that had hole [sic] punched into the cans near the
bottom of the cans, one glass jar with residue, coffee filters
that were soiled and putting off a strong [odor] of ether,
packaging for safety glasses, and latex gloves and protective
masks," 11 Neb. App. at 455-56, and the fact that, even if they
would not appear obviously inculpatory to a member of the general
public, or perhaps even to a judge, they would be quite obviously
incriminating to any law enforcement officer.

knowledge" of the facts giving rise to it (which would have obviated the need for an affidavit establishing probable cause, which was not submitted with an application for the arrest warrant).  However, relying on *Arizona v. Edwards*, 514 U.S. 1, (1995), the court held that it was reasonable for the executing officer to rely upon the warrant even if it did not show probable cause on its face by establishing the issuing judge's personal knowledge or recite in a supporting affidavit the facts establishing probable cause.  The court held that a judge of a county court can reasonably be considered to have "personal" knowledge of the court's own records, and in this case the warrant itself did set forth the operable facts.

An affidavit's failure to establish probable cause for the issuance of a "nighttime" search was not covered by the good faith exception to the exclusionary rule in a case in which the affiant was also the executing officer and the affidavit did not address separately any need for the search to occur at night, particularly when the warrant was not executed until *seven days after its issuance*.  State v. Fitch, 255 Neb. 108 (1998).  The affiant was held to "reasonable knowledge of what the law prohibits," including that facts, not just conclusions, must support a reasonable inference that the public interest justified serving the warrant before daylight.  Id. at 116.  Compare, U.S. v. Moore, 956 F.2d 843 (8th Cir. [Nebr] 1992) (Good faith exception applied even though insufficient facts presented in affidavit to justify no-knock entry).

In United States v. Thomas, 263 F. 3d 805 (8th Cir. 2001), the good faith exception applied when the address of the place to be searched was not correct on the warrant, but was in the affidavit which had not been incorporated into the warrant; the

21

affiant led in the execution of the search and had personal knowledge of the location; the location was under surveillance at the time the warrant was secured; and there was no evidence of bad faith.

In <u>U. S. v. Frangenberg</u>, 15 F. 3d 100 (8th Cir. 1994), the good faith exception to the exclusionary rule applied despite defendant's claimed unreasonableness of the officer's reliance on the search warrant affidavit which stated essentially only that an individual had presented to a pharmacist a prescription bottle found to contain suspected marijuana; the officer had personal knowledge of where the individual lived, it was his experience and belief that prescription bottles were normally kept at patient's residences, thus linking marijuana to the individual's home for which the search warrant was issued; and the officer had consulted the county attorney regarding warrant application.

In <u>U.S. v. Curry</u>, 911 F.2d 72 (8th Cir. 1990) the good-faith exception to the exclusionary rule applied to a defect in warrant arising from failure to describe premises to be searched with sufficient particularity where the failure to completely fill out the warrant form by omitting description of premises to be searched was more a clerical error than an indication of bad faith; and the address was included in both the application and supporting affidavit.

A reasonable officer in Investigator Eng's position and with his experience would know the law required that an affidavit in application for a search warrant must state facts, not bald conclusions.

3.   <u>Eighth Circuit Application of the Third Leon Exception</u>

The Eighth Circuit has held it is proper to consider
evidence outside the "four corners of the affidavit" in gauging
reasonableness from the "totality of the circumstances" leading
to the officer's belief in the warrant's validity.  <u>United States</u>
<u>v. Martin</u>, 833 F. 2d 752, 755 (8th Cir. 1987), <u>cert denied</u>, 494
U.S. 1070, quoting <u>Anderson v. Creighton</u>, 483 U.S. 635 641
(1987).  Generally the third exception to <u>Leon</u> has been applied
in situations which bolster the legitimacy of the officer's
reliance on a warrant's validity.

For example, the exception has been applied when the affiant
officer knew more than s/he put in the affidavit, and the omitted
information established probable cause or made probable cause at
least "arguable."  See, e.g., <u>Unites States v. Hallam</u>, 407 F. 3d
942 (8th Cir. 2005) (omitted information made it "likely" that
probable cause would have been established); <u>U.S. v. Carpenter</u>,
341 F.3d 666 (8th Cir. 2003) (defendant's claim that the
affidavit, when augmented with other information possessed by the
officer, presented a "close question," and "[o]n such issues,
officers may reasonably rely on the judgment of the issuing
magistrate").  Investigator Eng testified that all the
information he had was included in his affidavit.

The exception has also been applied when the affidavit's
shortcomings are rather technical in comparison to the totality
of information in the affidavit, see, e.g., <u>United States v.</u>
<u>Thomas</u>, 263 F.3d 805 (8th Cir. 2001) (erroneous address on
warrant but correct information on the affidavit supporting the
warrant application, and no evidence of bad faith); <u>U.S. v.</u>
<u>Curry</u>, 911 F. 2d 72 (8th Cir. 1990) (failure to completely fill

23

out the warrant form was "clerical" and not evidence of bad
faith); so long as the affidavit was not otherwise misleading.
Id.  This warrant was facially sufficient in form.

It has also been applied when the affiant has conferred with
a prosecuting attorney in drafting and/or presenting the warrant.
U.S. v. Frangenberg, 15 F. 3d 100 (8th Cir. 1994); United States
v. Terry, 305 F. 3d 818 (8th Cir. 2002).  Investigator Eng did
not seek assistance or review from a prosecutor or senior
officer.

The third exception has been applied when the officer-
affiant has had little experience in law enforcement or in
presenting affidavit/applications for search warrants.  See,
e.g., Unites States v. Hallam, supra, (officer's inexperience
warranted his deference to prosecutor's and magistrate's
conclusions that probable cause established).  Investigator Eng
had thirteen years of experience applying for search warrants.

In addition, it has been applied where the information in
the affidavit was so detailed as to be "self-corroborating," thus
overcoming a lack of information corroborating an anonymous tip.
U.S. v. Johnson, 78 F.3d 1258 (8th Cir. 1996).  There were no
details in this affidavit.

As noted in my earlier report and recommendation, however,
the parties have not cited, and after lengthy search, I have not
found any case applying the good faith exception to a situation
"on all fours" with this one, that is, a child pornography
investigation in which no specific facts indicating criminal acts
or evidence are presented in the affidavit.  In every case I have
reviewed, the exception is applied to conclusory affidavits only

24

when there is either (1) review by a prosecutor, and/or (2) *some*
*corroborating information* supporting the affidavit's use of the
conclusory term "pornography," such as email messages, contact
with known child pornography web sites, interviews with witnesses
and/or victims of the defendant's predation, a viewing of the
materials by the issuing judge, or descriptions of the ages of
the persons depicted in the materials, their state of dress or
undress, and/or the acts being performed.  I have found no case
applying--or refusing to apply--the exception in the circumstance
that the *only* "evidence" set out in the affidavit is that someone
(even a reliable citizen informant, as here) said they had been
told by someone else (even another reliable citizen informant, as
here) that the second person had found what s/he thought was
"child pornography" (or even "child pornography" distinguished
from "adult pornography," as here) in a third person's
possession.

      The government might argue that that fact in and of itself
means the officer must have been reasonable in believing the
warrant was valid.  Such an argument would require, however, that
Fourth Amendment principles established in other contexts not be
applied to a child pornography case.  That is not the law.  Leon
itself was a drug case, yet its principles have been applied in
other types of cases, including the Rugh and Terry child
pornography cases cited above.  See, e.g., Groh, v. Ramirez, 540
U.S. 551, 559 n. 4 (2004) (rejecting a claim of qualified
immunity based on Leon in a *Bivens* action against an officer who
obtained a warrant to search plaintiff's residence, despite its
failure to meet the "particularity" requirement); Malley v.
Briggs, 475 U.S. 335, 344-345 (1986) (Civil rights action, rule
of Leon applied in case of statute later ruled invalid);  United
States v. Olvey, 437 F. 3d 804 (8th Cir. 2006) (possession of

25

sawed-off shotgun); <u>United States v. Henderson</u>, 416 F. 3d 686
(8th Cir. 2005) (wire fraud, Social Security fraud, false
statements); <u>United States v. Carter</u>, 413 F. 3d 712 (8th Cir.
2005) (drugs and firearms).

The government has argued that the facts that I disagreed
with Judge Turnbull on the existence of probable cause in this
case, and that I acknowledged that Judge Turnbull is a reasonable
jurist, therefore means that Investigator Eng's belief in the
warrant's validity must of necessity have been reasonable.  The
argument is circular.  If the mere fact that two jurists
disagreed automatically meant that the officer was *ipso facto*
reasonable in his belief in the validity of the warrant, the
third <u>Leon</u> exception would have no meaning at all, for it could
never arise.  The question in this case is whether it applies to
excuse this officer's acceptance of this warrant.  In my view it
does not.

CONCLUSION

The affidavit in this case fell so far short of establishing
probable cause that the officer's acting on it as a valid warrant
was "entirely unreasonable."  The evidence adduced at the hearing
did not bring this case within the parameters of the third <u>Leon</u>
exception to the exclusionary rule; in fact, the evidence
underscored the lack of probable cause and the unreasonableness
of the officer's reliance.  The exclusionary rule should be
applied in this case, because it is reasonable to expect a
reasonably well trained officer to state evidentiary facts in
support of an application for a search warrant, or to submit his

26

or her affidavit to a prosecutor for guidance before submitting it to a judge or magistrate.

    IT THEREFORE HEREBY IS RECOMMENDED to the Hon. Richard G. Kopf, United States District Judge, that the defendant's motion to suppress, filing 24, be granted.

    The parties are reminded that a failure to object to this recommendation in accordance with the local rules of practice may be held to be a waiver of the right to appeal the district judge's adoption of the recommendation.

    IT FURTHER HEREBY IS ORDERED, Trial of this matter is set to commence at 9:00 a.m. on June 26, 2006.  Jury selection will be at commencement of trial.


    DATED April 20, 2006

                                BY THE COURT:


                                _s/_ *David L. Piester*
                                United States Magistrate Judge

27