IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | 4:05CR3105 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| GERALD GRANT, | ) | |
| | ) | |
| Defendant. | ) | |

Gerald Grant (Grant) is charged with possession of child pornography. He filed a motion to suppress the fruits of a search of his computer, and Magistrate Judge Piester has twice recommended that I grant the motion.

I now respectfully reject the judge's recommendations (including the findings of fact) and deny the motion to suppress. My reasons are set forth below.

## I.  PROCEDURAL HISTORY

Grant is charged with violating 18 U.S.C. § 2252(a)(4)(B). (Filing 1.) In particular, the Grand Jury charged that in September of 2003 Grant possessed visual depictions, transported in interstate commerce, the production of which involved the use of a minor engaging in sexually explicit conduct and which visual depictions were of such conduct. (Filing 1.) As we shall see, Grant's computer, seized pursuant to a warrant executed at a repair shop, contained many such depictions.

Grant filed a motion to suppress evidence obtained as a result of a search warrant executed on September 10, 2003, by the Nebraska State Patrol on Pro Computing, North Platte, Nebraska. (Filing 24.) The motion was premised on the assertion that the search warrant affidavit lacked probable cause and was so lacking

in probable cause as to render reliance on the warrant unreasonable. (Filing 25 at CM/ECF page 2 (Def.'s Br.).)

In the motion to suppress, Grant affirmatively represented (and thus admitted) that "Marshia[1] Grant brought a home computer into Pro Computing . . . for repair." (Filing 24 ¶ 1.) He also represented (and thus admitted) that the computer belonged to "Gerald and Marshia Grant[]" and that it was the "Grants' home computer." (Filing 24 ¶ 4.)

Judge Piester proceeded without an evidentiary hearing. Thus, after reviewing the briefs and without taking evidence, he issued an initial Report and Recommendation on February 9, 2006. (Filing 29.) The judge recommended that the motion to suppress be granted because (1) the search warrant affidavit failed to establish probable cause and (2) the good faith exception under United States v. Leon, 468 U.S. 897 (1984) was not applicable in this case. (Filing 29.)

The United States objected to the Report and Recommendation. (Filing 32.) Among other things, the United States noted that Judge Piester had failed to conduct an evidentiary hearing. On March 13, 2006, I remanded this matter to the magistrate judge for an evidentiary hearing. (Filing 34.)

I specifically directed the magistrate judge "to make findings under Leon why a reasonable officer standing in the shoes of Eng would not have reasonably understood that the words 'child pornography,' when used by David Lewis or when used in Eng's affidavit or when used in the judge's warrant, referred to 'child pornography' within the meaning of the Child Pornography Prevention Act, Neb.

---

[1]Mrs. Grant's first name is spelled as "Marshia" in some documents (e.g. filing 24 ¶ 1 (Defendant's motion) and Tr. 6) and "Marsha" in other documents (e.g. filing 28 at CM/ECF page 2 (Government's Brief)). I presume that "Marshia" is the correct name because that is the name used by the defendant in his motion.

-2-

Rev. Stat. Ann. §§ 28-1463.01 et seq." (Filing 34 at 2-3.) I also directed Judge Piester to "take evidence regarding and describing the nature of the images that were actually seized." (Id. at 3.)

An evidentiary hearing was held before the magistrate judge on April 5, 2006. (Filing 37.) Investigator Gary Eng was the only witness who testified at the evidentiary hearing. (Filing 42, Transcript of Evidentiary Hearing (hereinafter "Tr. __").) Grant formally elected to present no evidence. (Tr. 58.)

On April 20, 2006, the magistrate judge issued a supplemental Report and Recommendation, again recommending that the motion to suppress be granted. (Filing 41.) The judge again found that the warrant was insufficient to establish probable cause and the good faith exception set forth in Leon was not applicable.

The United States has renewed its objection to the Reports and Recommendations. (Filing 43.) Those Reports and Recommendations are before me, pursuant to 28 U.S.C. § 636(b)(1) and NECrimR 57.3.

## II. FACTS

To understand the case-deciding issues, one must delve into the background of the investigation. One should also read the affidavit and warrant. An appreciation of Nebraska law on "child pornography" and child abuse reporting is also helpful. A description of the fruits of the search provide an informative context.

### Eng's Investigation

Investigator Gary Eng testified that in September, 2003, he was employed by the Nebraska State Patrol as a criminal investigator in Broken Bow, Nebraska. (Tr. 3-4.) Broken Bow is in Custer County, Nebraska. Investigator Eng had been a drug

-3-

investigator for approximately ten years and in April, 2000 became an investigator in the criminal division.  (Tr. 4.)  Prior to September 10, 2003, Eng had never been a primary case agent on a case involving child pornography or sexually explicit conduct related to minors.  (Tr. 4.)

On September 9, 2003, Investigator Eng received a call from a Custer County Deputy Sheriff who advised Eng that Tracey Sundstrom[2] of North Platte, Nebraska, had contacted the Custer County Sheriff's Office in Broken Bow.  (Tr. 4-5.)  North Platte, Nebraska is in Lincoln County, Nebraska.  Depending on the route, the distance between Broken Bow, Nebraska and North Platte, Nebraska is roughly 75 miles.

Sundstrom, the owner of Pro Computing in North Platte, advised the Custer County Deputy Sheriff that Pro Computing had received for repair a home computer unit which "they felt contained child pornography."  (Tr. 5.)  Sundstrom had called the Custer County Sheriff because the owners of the computer were from Arnold, Nebraska, a small town in Custer County, Nebraska.  Although the owners of the computer resided in Arnold, Nebraska, because the computer processing unit was outside of Custer County, that is, in North Platte, Nebraska, the deputy decided to contact Investigator Eng, who had state-wide jurisdiction, so that Investigator Eng could pursue the matter in North Platte.  (Tr. 5.)

The next day, and on September 10, 2003, Eng drove from his office in Broken Bow to North Platte and met with Sundstrom at Pro Computing.  (Tr. 6.)  Eng testified that Sundstrom related to him that Marshia Grant brought the home computer unit to her business because it was not working correctly and she and her husband

_____

[2]Though Ms. Sundstrom's first name is alternately spelled "Tracey" and "Tracy" in court documents, "Tracey" is the correct spelling.  (Tr. 25.)  I use the "Tracy" spelling only when quoting documents containing that spelling.

wanted it repaired. (Tr. 6.) Sundstrom further indicated that computer technician David Lewis began work on the computer and told her that he found "child pornography" on the computer. (Tr. 6-7.)

David Lewis was not then present at the repair shop. (Tr. 10.) Rather, he was at home. (Tr. 10.) Eng understood that Lewis lived about 35 miles away. (Tr. 10.)

Eng testified that because "Miss Sundstrom had told me that the Grants had contacted them wanting to know if their computer was ready to go, I felt some urgency [to obtain a warrant before] they demanded their computer . . . and the evidence would be lost." (Tr. 10.) Indeed, the Grants had "called asking how soon it would be done on more than one occasion." (Tr. 47.) Thus, Eng did not try to contact Lewis at his home because Eng did not think he had the time to do so without losing the evidence. (Tr. 10-11.)

Sundstrom specifically indicated to Eng that Lewis had found "pornography" in the past while repairing other computers, but that Lewis had indicated that the images found on the computer brought in by Marshia Grant were "different." (Tr. 7.) Sundstrom stated to Eng that from her conversation with David Lewis, the images found on the computer brought in by Marshia Grant were "clearly different; it was child pornography." (Tr. 7.) Sundstrom told Eng that "in the past David Lewis and her other techs had observed adult pornography on computer units–processing units that they had repaired and that they had *not* come to her and described it as child pornography, nor had they ever reported [child pornography] before." (Tr. 14 (emphasis added).)

Eng further testified that Sundstrom told him that she felt she had a duty to report this and that she "feared of liability on her company if she did not report it." (Tr. 7-8.) Eng was unaware of any other instances where Pro Computing had

-5-

reported to the Nebraska State Patrol that a computer contained child pornography. (Tr. 8.)  Eng testified that Sundstrom appeared to be "very upset."  (Tr. 8-9.)

Sundstrom added that Lewis had also told her about a conversation that took place between Lewis and the defendant, Gerald Grant, regarding the computer.  (Tr. 12-13.)  Sundstrom specifically told Eng that Gerald Grant had told Lewis that "there were some raunchy pictures on the computer that he [Lewis] would find and that he [Grant] was wanting those saved."  (Tr. 13.)  Eng stated that there was no further discussion as to what either Lewis or Grant meant by the term "raunchy pictures." (Tr. 13.)

Eng testified that while discussing the matter with Sundstrom, she did not offer to show Eng pictures or images that were contained on the computer.  (Tr. 9-10.)  Eng stated that he did not make a specific request to see the images contained on the computer because he "felt at this point that I would need a search warrant prior to seeing the pictures."  (Tr. 10.)

Eng testified that he was familiar with the definitions set forth in the Child Pornography Prevention Act found in the Nebraska statutes.  (Tr. 14.)  When asked to state his working definition of child pornography, he stated that from his "general knowledge" about the Nebraska child pornography statutes, they define child pornography as "[s]exually explicit arousement, nudity of individuals–of actors under the age of 18 and observers that are under the age of 16" and give "a very detailed description of–of what those acts would be."  (Tr. 25).

Eng indicated that there was nothing in his conversation with Sundstrom that indicated to him that she was referring to any pictures or depictions that would not be covered under the Nebraska child pornography statutes.  (Tr. 15.)  He "understood when she [Sundstrom] said child pornography that . . . . it [met] the definition legally

of child pornography under the State statute even though [he] asked her nothing about the specifics of that child pornography." (Tr. 26-27.)

Eng was fortified in this conclusion because Sundstrom (and Lewis) had differentiated between adult and child pornography. (Tr. 14-16.) He also considered it important that Sundstrom would go to the trouble not only of reporting the material found on the computer, but would extend herself to the extent of contacting the Custer County Sheriff's Office rather than law enforcement in North Platte. Eng testified that the fact that Sundstrom made a long distance call to the Custer County Sheriff's Office highlighted the importance that Sundstrom placed on reporting this matter. (Tr. 15.)

Once Eng received this information, he immediately began to prepare an affidavit for search warrant. (Tr. 16.) He did so in Ms. Sundstrom's office. (Tr. 16.) Eng did not request input from a county attorney or anyone else related to this investigation. Eng testified that in using the term "child pornography" in the search warrant affidavit and application, he was using the term as Sundstrom had used it and with "full belief that it was as depicted in the Nebraska State statute." (Tr. 16.) Eng testified that he had no information that caused him to think that the images as described by Sundstrom were inconsistent with the definitions contained in Nebraska law. (Tr. 16-17.)

After the affidavit and application for search warrant was prepared, and on September 10, 2003, Eng went to the Lincoln County Courthouse (which is located in North Platte), and made contact with a clerk and requested to see Judge Turnbull. (Tr. 17.) Eng specifically testified that he had previously dealt with Judge Turnbull in obtaining search warrants. Beginning approximately in 1990, when Turnbull was the Lincoln County Attorney, Turnbull prosecuted several cases that stemmed from search warrants executed by Eng. (Tr. 18.)

-7-

Eng testified that since Turnbull became a county judge, Eng had obtained search warrants from Judge Turnbull on approximately four or five occasions. (Tr. 19.) Importantly, Eng also testified that Judge Turnbull had in the past turned down an affidavit and application for search warrant that had been prepared by Eng and requested additional information before signing the warrant. (Tr. 19-20.)

On September 10, 2003, after Eng contacted Judge Turnbull and presented his affidavit[3] for search warrant, the judge swore Eng in, reviewed the affidavit, asked if all the facts in the affidavit were true, and then signed the search warrant. (Tr. 20.) When Judge Turnbull reviewed the affidavit he did not ask any questions. (Tr. 20.) Judge Turnbull considered the affidavit and signed the search warrant in the same manner as had been encountered by Eng in the past. (Tr. 20-21.)

Judge Turnbull did not ask Eng the meaning of the term "child pornography," as it was used in the affidavit. (Tr. 21.) Eng stated that he had no reason to believe that Judge Turnbull was using the term "child pornography" in any way other than as it was defined in the statute. (Tr. 21.) Judge Turnbull did not ask to see any image or ask for a description of the images supposedly observed on the computer. (Tr. 21.) Eng again reiterated that the reason that he went to Judge Turnbull to seek a warrant was because he did not feel it was appropriate to see the images on the computer without a search warrant being obtained. (Tr. 22.)

Once Eng received the search warrant from Judge Turnbull, he went to Pro Computing and seized the computer. (Tr. 22.) Eng testified that a CD offered into evidence contained the images found on the computer. (Tr. 23-24; Ex. 1 to Filing 38.)

---

[3]The affidavit is filed as an exhibit to the motion to suppress (filing 24) and the magistrate judge took judicial notice of it at the evidentiary hearing (Tr. 17).

-8-

During the course of the evidentiary hearing, defense counsel questioned Eng extensively regarding whether Sundtorm used the word "adult" in reference to pornography previously observed by technicians.  Eng testified that his affidavit correctly stated the wording used by Sundstrom in discussing this matter with Eng. (Tr. 48-49.)

Specifically, Eng testified that Sundstrom told him that in the past her technicians had "observed pornography on other individuals' computers."  (Tr. 48.) Eng said it was his opinion that Sundstrom was concerned with this case because she believed there was a "difference" between what the technicians had seen in other cases and what Lewis saw in this case.  (Tr. 50.)  That information was included in the affidavit provided to the court.  (Tr. 48, 50.)

Eng testified that he was not concerned that his affidavit would be construed as a "bare bones affidavit."  (Tr. 50.)  In fact, with over ten years of experience as an investigator and with more than 50 search warrant applications to his credit, Eng did not believe that the affidavit was in fact "bare bones."  (Tr. 31-32.)  On the contrary, Eng stated that there was nothing about the manner in which the affidavit was prepared or the search warrant was signed by Judge Turnbull which caused him any concern.  (Tr. 51-52.)

### The Affidavit

The affidavit for issuance of a search warrant is set forth below.  It is short and to the point.  It states:

The complaint and affidavit of Investigator G.J. Eng, of the Nebraska State Patrol, on this the 10th day of September, 2003, who being first duly sworn upon oath says:

-9-

Your Affiant is a Criminal Investigator with the Nebraska State Patrol, he has been a sworn law enforcement officer since June 1984. Your Affiant has been in the Investigative Services Division of the Nebraska State Patrol since June 1990. Your Affiant has been involved in numerous Search Warrant as the Affiant in the past 13 years.

On September 9, 2003 Your Affiant was contacted at home by Custer County Sheriff Deputy Tyler Shea. Deputy Shea advised Your Affiant that the Custer County Sheriff's Office had been contacted by Tracy Sundstrom of Pro Computing 721 South Dewey Street, North Platte Ne. on September 9, 2003. Sundstrom advised the Sheriff's Office that Marsha Grant of Arnold, Ne. had brought a home computer processing unit in to Pro Computing for repair. Sunstrom advised that a service technician, David Lewis, found what he believes to be child pornography.

On September 10, 2003, Your Affiant contacted Tracey Sundstrom of Pro Computing located at 721 South Dewey, North Platte, Ne. Sundstrom advised Your Affiant that David Lewis was not at work at that time. Sundstrom advised Lewis had been a Computer technician for a long time and has worked on several home computer processing units. Sundstrom advised Lewis has found pornography on several computers but believes that what he found on the Grant's computer to be child pornography.

Your Affiant knows that child pornography on home computer processing unit is rapidly becoming an epidemic which is contrary to Nebraska State Statutes.

Your Affiant knows that Pro Computing is located at 721 South Dewey Street, North Platte, Lincoln County, Ne.

Your Affiant requests a Search Warrant be issued for Pro Computing, located at 721 South Dewey, North Platte, Lincoln County Ne. for the

seizure of the Gerald and Marsha Grant home computer processing unit and for the analysis of the Grant's home computer processing unit.

Your Affiant acknowledges that this Search Warrant shall be served during normal business hours.  Your Affiant asks that the requirement of knocking and announcing be waived so as to not disrupt the normal business of Pro Computing as they are an innocent third party.

Further Your Affiant sayeth naught.

(Filing 24, Ex. 1 at 1-2) (misspellings and the like as in original).

### *The Search Warrant*

The full text of the search warrant is set for below.  It states:

To Investigator G.J. Eng of the Nebraska State Patrol,

That based upon the sworn Affidavit for issuance of a Search Warrant of investigator G.J. Eng of the Nebraska State Patrol dated September 10, 2003, that there is probable cause to believe that concealed in the Gerald and Marsha Grant's home computer processing unit is child pornography.  This Search Warrant is issued for the seizure and analysis of the Grant's home computer processing unit currently located at Pro Computing located at 721 South Dewey, North Platte, Lincoln County, Ne.

And if found, to seize and analyze the contents of said home computer processing unit, the same as provided by law, and to make a return of this warrant to me within ten day [sic] after the date of issuance.

This Search Warrant shall be served during normal business hours of Pro Computing.

This Search Warrant does not require Investigator G.J. Eng to knock and announce his presence because this requirement would disrupt the normal business of Pro Computing, an innocent third party.

Given under my hand this the 10th day of September, 2003.

(Filing 24, Ex. 1 at 3).

### *Nebraska's Child Pornography Prevention Act*

I take judicial notice for the purposes of evidence of Nebraska's Child Pornography Prevention Act as it existed in September of 2003.[4] Neb. Rev. Stat. §§ 28-1463.01 to 28-1463.05 (LexisNexis 2003). Among other things, Nebraska law prohibits the possession, with intent to rent, sell, deliver, distribute, trade or provide, "any visual depiction of sexually explicit conduct which has a child as one of its participants . . . ." Neb. Rev. Stat. § 28-1463.05(1). Terms are defined in the Nebraska Child Pornography Prevention Act as follows:

As used in the Child Pornography Prevention Act, unless the context otherwise requires:

(1) Child, in the case of a participant, shall mean any person under the age of eighteen years and, in the case of a portrayed observer, shall mean any person under the age of sixteen years;

(2) Erotic fondling shall mean touching a person's clothed or unclothed genitals or pubic area, breasts if the person is a female, or developing breast area if the person is a female child, for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more persons involved. Erotic fondling shall not be construed to

---

[4]The government specifically asked Judge Piester to take judicial notice of the law but the judge gave no audible response. (Tr. 2.) Despite that, it appears that the parties and the judge believed he had done so.

include physical contact, even if affectionate, which is not for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved;

(3) Erotic nudity shall mean the display of the human male or female genitals or pubic area, the human female breasts, or the developing breast area of the human female child, for the purpose of real or simulated overt sexual gratification or sexual stimulation of one or more of the persons involved;

(4) Sadomasochistic abuse shall mean flagellation or torture by or upon a nude person or a person clad in undergarments, a mask, or bizarre costume, or the condition of being fettered, bound, or otherwise physically restrained when performed to predominantly appeal to the morbid interest;

(5) Sexually explicit conduct shall mean: (a) Real or simulated intercourse, whether genital-genital, oral-genital, anal-genital, or oral-anal between persons of the same or opposite sex or between a human and an animal or with an artificial genital; (b) real or simulated masturbation; (c) real or simulated sadomasochistic abuse; (d) erotic fondling; (e) erotic nudity; or (f) real or simulated defecation or urination for the purpose of sexual gratification or sexual stimulation of one or more of the persons involved; and

(6) Visual depiction shall mean live performance or photographic representation.

Neb. Rev. Stat. § 28-1473.02.

### *Nebraska's Child Abuse Reporting Requirements*

Eng was impressed by the fact that Ms. Sundstrom was upset and concerned that she might have liability if she did not report what Lewis observed. Ms. Sundstrom's concern, and the significance that Eng put on that concern, was not

-13-

fanciful.  In this regard, I take judicial notice for the purposes of evidence of relevant portions of Nebraska law on the reporting requirements of child abuse.

The statutes requiring reporting of child abuse as in effect in 2003 define abuse to include "knowingly, intentionally, or negligently causing or <u>permitting a minor child</u> to be . . . [s]exually abused . . . or [s]exually exploited by allowing, encouraging, or forcing such person <u>to</u> solicit for or <u>engage in</u> prostitution, debauchery, public indecency, or <u>obscene or pornographic photography, films, or depictions</u> . . . ."  Neb. Rev. Stat. Ann. § 28-710(2) (LexisNexis 2003) (emphasis added).[5]

The child abuse reporting statute as in effect in 2003 provides in full as follows:

> (1)    When any physician, medical institution, nurse, school employee, social worker, or <u>other person has reasonable cause to believe that a child has been subjected to abuse or neglect</u> or observes such child being subjected to conditions or circumstances which reasonably would result in abuse or neglect, <u>he or she shall report such incident or cause a report to be made to the proper law enforcement agency or to the department on the toll-free number established by subsection (2) of this section</u>.  Such report may be made orally by telephone with the caller giving his or her name and address, shall be followed by a written report, and to the extent available shall contain the address and age of the abused or neglected child, the address of the person or persons having custody of the abused or neglected child, the nature and extent of the abuse or neglect or the conditions and circumstances which would reasonably result in such abuse or neglect, any evidence of previous

---

[5]I cite the relevant statutes as in effect in 2003 and prior to their amendment in 2005.  The amendments to sections 28-710 and 28-711 were stylistic or clarifying in nature.  For instance, the modifier "child" was placed before the term "neglect" in several instances, and sections 28-710 to 28-727 were denoted the "Child Protection Act."  Neb. Laws 2005, L.B. 116, §§ 2-3.  The statutes as presently in effect are located in the 2005 cumulative supplement to the statutes.

abuse or neglect including the nature and extent, and any other information which in the opinion of the person may be helpful in establishing the cause of such abuse or neglect and the identity of the perpetrator or perpetrators. Law enforcement agencies receiving any reports of abuse or neglect under this subsection shall notify the state central registry on the next working day by telephone or mail.

> (2)    The department shall establish a statewide toll-free number to be used by any person any hour of the day or night, any day of the week, to make reports of abuse or neglect. Reports of abuse or neglect not previously made to or by a law enforcement agency shall be made immediately to such agency by the department.

Neb. Rev. Stat. Ann. § 28-711 (LexisNexis 2003) (emphasis added).

### *The Fruits of the Search*

Although terribly disturbing, I have reviewed the entire CD that compiles the fruits of the search. (Tr. 23-24; Filing 38, Ex. 1.) It contains many visual depictions of sexually explicit conduct. Some of them are "still photos" and others are "videos" (moving pictures). Many, if not all, of the 181 photos and 35 videos clearly fit the legal definition of "child pornography" under Nebraska law. [6]

For example, the video numbered "0004.avi" was indexed in Grant's computer with words ending in "mace 6yo fuck ilégal.avi." (Ex. 1 (under EnCase Report\Gerald Grant.html).) The video begins with the following words flashed on the screen: "Daddy and Me at 6." The video shows an adult male having sexual intercourse with a very young girl, perhaps six years of age. Replete with a close up,

---

[6]They also fit under federal law. See 18 U.S.C. § 2256 (defining "sexually explicit conduct" and "child pornography"). However, since the search was conducted pursuant to Nebraska law, Nebraska law is most particularly helpful when it comes to understanding whether Eng and Judge Turnbull acted reasonably.

it shows the adult male's penis in the child's vagina. Sadly, the images do not appear to be animations, but rather appear to actually record the rape of a very young girl. The video is 18 seconds long.

### III.  ANALYSIS

I have great respect for Judge Piester and his thoughtful opinions. Indeed, I almost always agree with him. That said, I reject his decision in this case because it depreciates critical facts and because it is too demanding as a legal matter. I come to this conclusion for three independent reasons.

First, in order for a Fourth Amendment violation to have taken place *the defendant must prove* that he has a reasonable expectation of privacy in that which the government seized and searched.  See, e.g., United States v. Bailey, 272 F. Supp.2d 822, 834 (D. Neb. 2003) (child pornography case; stating that "[t]he person challenging the constitutionality of a search 'has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable[,] that is, one that society is willing to accept'"; deciding that the defendant did not have an expectation of privacy in the information stored in his work computer, and therefore, officers' search of his work computer pursuant to a warrant issued on the basis of false statements did not violate defendant's Fourth Amendment rights) (citing United States v. Mendoza, 281 F.3d 712, 715 (8th Cir. 2002) (quoting United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999)).  "If there is no legitimate expectation of privacy, then there can be no Fourth Amendment violation."  United States v. Bach, 310 F.3d 1063, 1066 (8th Cir. 2002) (child pornography case), cert. denied, 538 U.S. 993 (2003).

Here, the defendant failed to prove that he had a reasonable expectation of privacy in the images that were viewed by the computer technician, Mr. Lewis. Quite the contrary, the undisputed evidence reveals that the defendant's wife took the

computer to be repaired and the defendant personally told Lewis that he would find "raunchy" photographs on the computer.  He even went so far as to tell Lewis to save that awful bilge.  Obviously, then, the defendant consented to Lewis' examination of whatever child pornography that Lewis might find.  Having consented to allowing a repairman access to this vile cache, Grant cannot complain that the government possesses and will use against him that which was revealed to a member of the public by his own consent.

In a very similar case, one Court of Appeals decided that a defendant did not possess a reasonable expectation of privacy in the images viewed by a repairman and seized without a warrant by the government.  See United States v. Grimes, 244 F.3d 375, 383 (5th Cir. 2001) (holding that the defendant did not possess reasonable expectation of privacy in JPG files of unclothed, young girls once they were opened by computer store employee in normal course of repairing computer that was low on space, such that warrantless seizure of just those JPG files by law enforcement agents in response to phone call from repairman did not violate the defendant's Fourth Amendment rights).  Thus, even if the warrant was invalid, and Leon did not apply, the defendant is not entitled to suppression of the child pornography that Lewis first viewed because the defendant had no reasonable expectation of privacy in those images.

As a consequence, even if I were to suppress the images that Lewis did not view,[7] the government would still be able to put into evidence at trial such of the images that Lewis could identify as having been viewed by him.  For those images, Grant has no expectation of privacy.  But, and as we shall see, such an approach is unnecessary, since suppression of the remainder of the images is not appropriate.

---

[7]At this point, it is not clear what images Lewis viewed and what images he did not view.

Second, Lewis' eye witness observations of child pornography, as recounted in the search warrant affidavit, are alone sufficient to establish the probability that a crime had been committed and contraband related to that crime would be found in the guts of the computer located at the repair shop. While I agree with the Judge Piester that Lewis' description was a conclusion, I do not attach the same pejorative connotation to the term "conclusion" as he does.

"Conclusions" are perfectly fine for Fourth Amendment and "probable cause" purposes so long as they are facially reasonable and apparently predicated upon a sufficient foundation. Judged only against the affidavit,[8] Lewis' conclusion appears to be facially reasonable (as a result of his long work history, he had experience looking at images from home computers and distinguishing between child pornography and other pornography) and his conclusion was apparently predicated upon a sufficient foundation (he actually examined the defendant's computer and at least some of the images).

The concept of "probable cause" is not mystical and the existence of probable cause is not hard to show nor is it difficult to assess. On the contrary, a search warrant affidavit "'should be examined under a common sense approach and not in a hypertechnical fashion.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (affirming denial of motion to suppress fruits of a search warrant for child pornography) (citation omitted). "The existence of probable cause depends on whether, in the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Id. (citation

---

[8]In this regard, and to reiterate, the affidavit stated in pertinent part: "Sundstrom advised Lewis had been a Computer technician for a long time and has worked on several home computer processing units. Sundstrom advised Lewis has found pornography on several computers but believes that what he found on the Grant's computer to be child pornography." (Filing 24, Ex. 1.)

-18-

omitted.)  Because we want police officers to apply for warrants rather than seizing things without court approval, the "'preference for warrants is most appropriately effectuated by according great deference to a magistrate's determination' as to whether an affidavit establishes probable cause."  Id. (citation omitted).

When I apply this very deferential and common sense test, Eng's affidavit was sufficient to establish that there was a fair probability that child pornography would be found at the repair shop.[9]  In short, an apparently unbiased computer repairman's claim to have seen "child pornography" on a computer, after actually examining the innards of the machine and comparing the results against other pornography that he had previously seen while performing his job, has all the real life attributes of "probability" that the law requires.  Cf. United States v. Simpson, 152 F.3d 1241, 1246 (10th Cir. 1998) (the words "'child pornography' are adequate" and "'need no expert training or experience to clarify their meaning.'") (citation omitted); United States v. Koelling, 992 F.2d 817, 822 (8th Cir. 1993) (the term "child pornography" was not uncertain and the "Constitution requires no greater precision.").[10]  While Judge Piester and I would likely have exercised our discretion to require more detail had we been asked to issue the warrant, we are not at liberty to substitute our preferences for the minimal standards of probable cause that the law imposed upon Investigator Eng and Judge Turnbull.

I thus respectfully reject the First Circuit's decision in United States v. Brunette, 256 F.3d 14, 19 (1st Cir. 2001), and Judge Piester's reliance upon it. Apparently, Brunette prohibits the issuance of a search warrant for child pornography

---

[9]For this purpose, I view the affidavit in isolation.  That is, I look only to the "four corners" of the document to judge the sufficiency of the probable cause showing.  Id. at 827 (citation omitted).

[10]In the spirit of full disclosure, I wrote Koelling while designated to sit with the Circuit.

-19-

without an independent review by the judge of the images used to establish probable cause or without a minutely detailed (read lurid) description of those images by the police officer.  While such a decision may be good policy (a doubtful proposition), Judge Piester and I lack the authority to make that sort of policy.  More importantly, the decision does not represent the law in the Eighth Circuit.  See, e.g., United States v. Chrobak, 289 F.3d 1043, 1045 (8th Cir. 2002) (citing and following Koelling and stating that the affidavit was sufficient when it recited the language of the statute, such as "graphic files depicting minors engaged in sexually explicit conduct.")

Third, even if the warrant affidavit was insufficient, the "good faith" exception found in Leon saves this search.  Judge Piester's contrary finding–that reliance on the accounts of Sundstrom and Lewis fails to show objective "good faith" because they are but "bare bones"–misconstrues the facts.  It also holds both the investigator and the judge to an excessive standard.  My primary reasons for disagreeing with Judge Piester on the Leon question are these:

1.      Lewis was not an ordinary citizen.  He was a person who spent his life repairing computers and of necessity was required to peer at all sorts of images.  He had an obvious and particular business reason for not wanting to aid or abet the commission of a crime by repairing a computer that he knew was being unlawfully used.  He also had an obvious and particular business reason not to drive customers away by falsely or mistakenly reporting them to the police.  Therefore, by virtue of specific experiences learned from working as a computer repairman, a reasonable investigator and a reasonable judge could reasonably conclude that a computer technician is uniquely able, and properly motivated, to distinguish between child pornography and lawful images.  Thus, it was objectively reasonable for the investigator and the judge to conclude that no further detail was needed when the repairman reported

his observation of "child pornography."[11]  This is true even if, in the rarified atmosphere of the federal courts, the warrant affidavit should have been more detailed as to why Lewis came to the conclusion that what he saw was unlawful.

2.    There was not the slightest reason for Investigator Eng or Judge Turnbull to think that Lewis was prudishly pursuing avant-garde art[12] or that he was otherwise factually mistaken.  On the contrary, the defendant admitted to Lewis that the photos were "raunchy" and Sundstrom emphasized to Eng that what Lewis saw was unique and different and worrisome.  Indeed, Sundstrom was very upset by what Lewis told her because she feared that she might face legal liability if she did not report it.  Nebraska law lends credence to her concern and thus Eng's reliance upon that concern.

3.    In this jurisdiction, there was no readily apparent legal reason for Eng or Judge Turnbull to think the words "child pornography" were too vague or imprecise.  Quite the contrary, ten years before the search in this case, the Eighth Circuit had stated that the term "'child pornography' . . . as used in the affidavit and the warrant" was not "so uncertain as to make the warrant defective . . . ."  Koelling, 992

---

[11]Academic debates aside, I defy anyone to view "0004.avi" ("mace 6yo fuck ilégal.avi"), or the many images like it in Exhibit 1, and then argue with a straight face that Lewis needed special training to tell that this crap is illegal child pornography.  Cf. Koelling, 992 F.2d at 822 (deciding that "[m]ost minors look like minors and most adults look like adults, and most of the time most law enforcement officers can tell the difference.")

[12]Trust me, North Platte is not New York.  Even so, only a "tiny fraction" of pictures portraying the sexual acts of children might fall within the First Amendment's range.  New York v. Ferber, 458 U.S. 747, 773 (1982).

F.2d at 822.  Still further, the First Circuit case upon which Judge Piester relies also decided that the absence of minute descriptions of the images used to establish probable cause did not amount to bad faith and, instead, affirmed the denial of the suppression motion on the basis of the Leon rationale.  Brunette, 256 F.3d at 19-20.  I cannot understand why the same decision is not appropriate here.

4.     Eng faced exigent circumstances that required him to act quickly.  Lewis was not present at the scene to describe the images in greater detail, and multiple phone calls from the defendant and his wife indicated that if Eng did not quickly secure a warrant the evidence would be lost.  Thus, without pursing his investigation any further, Eng reasonably but hurriedly prepared his search warrant affidavit while on the premises of the repair shop.

5.     Eng acted cautiously.  Even though he did not need a warrant to seize the images that Lewis had already viewed and Eng could have seized just those images without a court's approval, Grimes, 244 F.3d at 383, Eng sought a judge's warrant.  This is the antithesis of bad faith, and extremely strong evidence of objective good faith.

6.     There is no reason to think that Judge Turnbull acted as "rubber stamp" and there is a potent reason to think otherwise.  Indeed, the undisputed evidence is that in the past when Eng approached Judge Turnbull for a warrant and the judge thought the application insufficient, the warrant request was denied.  Thus, Eng had a particularly good and objective reason for believing that if Judge Turnbull was satisfied with the probable cause showing then Eng had no reason to doubt the legality of his actions.

*IV.  CONCLUSION*

The Fourth Amendment bars only unreasonable searches and seizures. Because the defendant has shown no reasonable expectation of privacy in at least some of the images, because the search warrant affidavit sufficiently established probable cause, and because, even if the affidavit lacked enough detail, the investigator and the judge acted "reasonably" as that term is objectively understood, the motion to suppress will be denied.

Accordingly,

IT IS ORDERED that the reports and recommendations (filings 29 and 41) are rejected and Grant's motion to suppress (filing 24) is denied.

May 24, 2006.                              BY THE COURT:

                                           *Richard G. Kopf*
                                           United States District Judge

-23-